ATTORNEYS FOR APPELLANT
Susan K. Carpenter
Public Defender of Indiana

Anne-Marie Alward
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

---

## In the
## Indiana Supreme Court

**FILED**
Feb 27 2008, 8:54 am

*[signature]*
**CLERK**
of the supreme court,
court of appeals and
tax court

No. 82S05-0701-PC-31

ANTWAIN HENLEY,

*Appellant (Petitioner below),*

v.

STATE OF INDIANA,

*Appellee (Respondent below).*

Appeal from the Vanderburgh Circuit Court, No. 82C01-9808-CF-775
The Honorable Carl A. Heldt, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 82A05-0508-PC-480

**February 27, 2008**

**Rucker, Justice.**

When a trial court summarily denies a pro se defendant's request that standby counsel deliver closing argument, the denial is not per se reversible error. Rather, the inquiry is whether the trial court abused its discretion in denying the request for counsel.

**Facts and Procedural History**

In August 1998 Antwain Henley was charged with attempted murder, a Class A felony, two counts of kidnapping as Class A felonies, two counts of robbery as Class B felonies, carjacking as a Class B felony, and criminal mischief as a Class D felony. The essential facts are these. Henley and his girlfriend were walking across a street in Evansville when two people unknown to them, Tiffany Moorman and Tosheika Douglas, drove up in a car and asked for directions. Henley and his girlfriend offered to show the young women the way. After entering the car, Henley produced a handgun and demanded money. He shot out the back window of the car to show that he was serious. Henley ordered Moorman to drive to a certain location, and once there, he told Moorman to park behind a building and turn off the engine. Henley and his girlfriend then ordered Douglas and Moorman to get out of the car and remove their clothing. Forcing the young women into the trunk, Henley drove away. Shortly thereafter Evansville police officers on routine patrol spotted the car with its missing window and also recognized Henley's girlfriend for whom there was an outstanding arrest warrant. When officers stopped the car Henley bolted and ran from the scene. The two unclothed young women were discovered in the trunk. Using a canine, Evansville police officers tracked Henley to a van. When the dog entered the van, Henley began shooting. A bullet struck the dog resulting in fatal injury.

Because Henley was indigent, the trial court appointed counsel to represent him. At a pre-trial hearing on December 22, 1998, Henley advised the judge that he was dissatisfied with his court appointed counsel and requested that another lawyer be appointed. The trial court denied the request informing Henley that he could either obtain private counsel or proceed pro se. Henley told the trial court that he wanted to represent himself. The trial court then advised Henley of the perils and pitfalls of self-representation. Among other things the trial court advised Henley that he would be held to the same rules of trial procedure and evidence as an attorney and he would be responsible for making arguments, questioning witnesses, and selecting

jurors. Further, the trial court pointed out the disparity between Henley's and counsel's education and knowledge of the law. Several times the trial court advised Henley that it might not be in his best interest to represent himself. Henley responded that he understood these advisements but insisted that he wanted the court to appoint another lawyer. Informed that this was not an option, Henley responded, "Well, I don't have the money for it. If I can't get [a different] appointed counsel . . . he can be on standby, he can work with me." Tr. at 54. The trial court granted Henley's request to proceed pro se and directed Henley's court appointed counsel to act in a standby capacity.

With standby counsel at his side, Henley represented himself in a two-day jury trial that began January 4, 1999. At the close of trial but before final summation, Henley requested that standby counsel deliver the closing argument. The State objected and without elaboration the trial court denied Henley's request. Henley proceeded with closing argument. Ultimately the jury returned a verdict of guilty as charged on all counts. After a hearing, the trial court sentenced Henley to forty years for Class A felony attempted murder,[1] forty years for each count of Class A felony kidnapping, fifteen years for each count of Class B felony robbery,[2] and fifteen years for Class B felony carjacking. The trial court imposed the maximum term of three years for Class D felony criminal mischief.[3] The sentences for kidnapping, robbery, carjacking, and criminal mischief were ordered to be served concurrently with each other but consecutively to the forty-year sentence for attempted murder, for a total executed term of eighty years imprisonment.

Represented by counsel, Henley pursued a direct appeal raising ten issues for review. Finding four of the issues waived for lack of cogent argument and failure to cite relevant legal

---

[1] Ind. Code § 35-50-2-4 (1998) ("A person who commits a Class A felony shall be imprisoned for a fixed term of thirty (30) years, with not more than twenty (20) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances. . . .").

[2] I.C. § 35-50-2-5 (1998) ("A person who commits a Class B felony shall be imprisoned for a fixed term of ten (10) years, with not more than ten (10) years added for aggravating circumstances or not more than four (4) years subtracted for mitigating circumstances. . . .").

[3] I.C. § 35-50-2-7 (1998) ("A person who commits a Class D felony shall be imprisoned for a fixed term of one and one-half (1½) years, with not more than one and one-half (1½) years added for aggravating circumstances or not more than one (1) year subtracted for mitigating circumstances.").

authority, the Court of Appeals addressed the remaining claims and in an unpublished Memorandum Decision affirmed the judgment of the trial court. See Henley v. State, 82A01-9904-CR-141 (Ind. Ct. App. Apr. 11, 2000).

On December 15, 2000 Henley filed his pro se petition for post-conviction relief, which was later amended by counsel. Following hearings held on July 15, 2004 and December 15, 2004, the post-conviction court denied relief. Henley appealed raising the following restated claims: (1) appellate counsel failed to raise on direct appeal the trial court's summary denial of Henley's request that standby counsel deliver closing argument, (2) appellate counsel failed to raise on direct appeal the trial court's failure to consider his mental retardation as a mitigating factor, (3) appellate counsel raised but failed to present a cogent argument to challenge the sufficiency of the evidence supporting the attempted murder conviction, (4) the court should reconsider its ruling on direct appeal that Henley's waiver of his right to counsel was knowing, intelligent, and voluntary, and (5) the court should reconsider its ruling on direct appeal whether the wearing of a stun belt violates due process of law. Finding the first issue dispositive, the Court of Appeals reversed the judgment of the post-conviction court and remanded this cause for a new trial. Henley v. State, 855 N.E.2d 1018 (Ind. Ct. App. 2006). Having previously granted the State's petition to transfer, we now affirm in part and reverse in part the judgment of the post-conviction court. Additional facts are recited below as necessary.

**Standard of Review for Post-Conviction Proceedings**

The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004). When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Id. To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Weatherford v. State, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and

4

judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." Ben-Yisrayl v. State, 729 N.E.2d 102, 106 (Ind. 2000) (citation omitted).

## Standard of Review for Ineffective Assistance of Counsel

Henley's reviewable claims fall under the heading of ineffective assistance of appellate counsel.[4] The standard of review for such claims is the same as for trial counsel in that the defendant must show appellate counsel was deficient in his or her performance and that the deficiency resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 686 (1984); Bieghler v. State, 690 N.E.2d 188, 192-93 (Ind. 1997). To satisfy the first prong, the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment. McCary v. State, 761 N.E.2d 389, 392 (Ind. 2002). To satisfy the second prong, the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different. Id.

When raised on collateral review ineffective assistance of appellate counsel claims generally fall into three basic categories: (1) denial of access to an appeal, (2) waiver of issues, and (3) failure to present issues well. Reed v. State, 856 N.E.2d 1189, 1195 (Ind. 2006); Fisher, 810 N.E.2d at 677. Here, Henley makes three claims: (1) appellate counsel rendered ineffective assistance for failing to raise the trial court's summary denial of Henley's request that standby counsel deliver closing argument, (2) appellate counsel failed to challenge the trial court's failure

---

[4] Two of the claims Henley raises are barred by the doctrine of res judicata. On direct appeal Henley argued that he did not knowingly, intelligently, and voluntarily waive his right to be represented by counsel. Recounting evidence in the record that revealed otherwise, the Court of Appeals disagreed. Henley, 82A01-9904-CR-141 at *4-5. Also on direct appeal Henley challenged the trial court's ruling requiring him for "security reasons" either to wear shackles or a stun belt during trial. Id. at *7-8. The Court of Appeals determined that Henley had failed to demonstrate that he was prejudiced by the stun belt and that the trial court did not abuse its discretion in setting forth its reasons for requiring Henley to wear the device. Id. at *8. An issue previously considered and determined in a defendant's direct appeal is barred for post-conviction review on grounds of prior adjudication – res judicata. Reed, 856 N.E.2d at 1194.

to consider Henley's mental retardation as a mitigating factor in sentencing, and (3) appellate counsel raised but failed to present a cogent argument to challenge the evidence supporting the attempted murder conviction. Henley's first two claims are based upon the waiver of issues category, and his third claim falls under the category of failure to present issues well. We address each claim in turn.

## Discussion

### I.

### *Summary Denial of Request for Standby Counsel*

As recounted above, when Henley requested that his standby counsel deliver closing argument, the trial court denied the request without elaboration. Appellate counsel did not raise this issue on direct appeal. And Henley claims counsel rendered ineffective assistance in failing to do so.

To show that counsel was ineffective for failing to raise an issue on appeal thus resulting in waiver for collateral review, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. Ben-Yisrayl v. State, 738 N.E.2d 253, 260-61 (Ind. 2000). To evaluate the performance prong when counsel waived issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are "clearly stronger" than the raised issues. Timberlake v. State, 753 N.E.2d 591, 605-06 (Ind. 2001). If the analysis under this test demonstrates deficient performance, then we evaluate the prejudice prong which requires an examination of whether "the issues which . . . appellate counsel failed to raise, would have been clearly more likely to result in reversal or an order for a new trial." Bieghler, 690 N.E.2d at 194 (citation omitted). Although the performance prong and the prejudice prong are separate inquiries, failure to satisfy either prong will cause the claim to fail. French v. State, 778 N.E.2d 816, 824 (Ind. 2002). If we can easily dismiss an ineffective assistance claim based upon the prejudice prong, we may do so without addressing whether counsel's performance was deficient. Wentz v. State, 766 N.E.2d 351, 360 (Ind. 2002). Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. French, 778 N.E.2d at 824.

6

Our opinion in Koehler v. State, 499 N.E.2d 196 (Ind. 1986), is important to this discussion. The defendant in that case proceeded pro se before a jury on a charge of battery. After the jury found him guilty as charged but before the habitual offender phase of trial began, the defendant requested that his standby counsel take over his defense. The trial court refused the request, and the defendant was found to be a habitual offender. On appeal the defendant contended that the trial court violated his Sixth Amendment right to counsel by refusing to appoint counsel for the habitual offender hearing. Addressing this claim the Court cited with approval authority from various jurisdictions that had determined that it was within the trial court's discretion to appoint counsel after a defendant had begun the trial pro se. The Court continued:

> Relevant factors must be considered by the trial court in order for it to exercise a meaningful discretion in ruling on defendant's request to change from self-representation to counsel-representation. . . . Relevant factors should include, among others, the following: (1) defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel-representation; (2) the reasons set forth for the request; (3) the length and stage of the trial proceedings; (4) disruption or delay which reasonably might be expected to ensue from the granting of such motion; and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney.

Id. at 199 (quotation omitted). Examining the record and applying the foregoing factors,[5] the Court concluded, "[I]t was an abuse of discretion to refuse Koehler's request for counsel." Id. The habitual offender adjudication was thus reversed and the cause was remanded for a new habitual offender phase of trial.

---

[5] Specifically, the Court noted: (1) the defendant "made the decision to proceed *pro se* before trial and did not change his mind until trial on the battery charge had concluded," (2) his stated reason for requesting counsel at this late stage was "legitimate; he acknowledged that he was unfamiliar with the legal intricacies of an habitual offender hearing and thus could not adequately defend himself. His poor performance during the battery trial supported his statement," (3) his "request came at an opportune moment between trial on the battery charge and the habitual offender proceeding," (4) "The State does not allege the appointment of counsel would have created any delay. No continuance would have been necessary because standby counsel was familiar with the case," and (5) the defendant "had failed miserably as defense counsel during the battery trial and there was no reason to believe he would have fared any better during the habitual proceeding." Koehler, 499 N.E.2d at 199.

7

In Dowell v. State, 557 N.E.2d 1063 (Ind. Ct. App. 1990), the Court of Appeals addressed a claim that the trial court erred when it refused to allow defendant's standby counsel to conduct closing argument. After he appeared in court without counsel – having advised the court that he would hire his own attorney and did not need a court appointed attorney – the trial court issued an order appointing counsel for Dowell. Dowell refused the appointed counsel's services, and upon the court's order, counsel continued to serve in an advisory capacity only. Prior to voir dire, the court asked Dowell on two occasions if he wanted to represent himself, and Dowell responded affirmatively. The court informed Dowell he would be held to the same standards as an attorney. Dowell represented himself at voir dire and at the trial. Prior to his closing argument, Dowell requested that his advisory counsel be permitted to conduct the final summation. The court denied the request stating, "for reasons that I am not at liberty to go into, that would be inappropriate at this point." Id. at 1068 (quoting record). Dowell conducted his own closing argument and was convicted as charged of theft and forgery.

On appeal Dowell raised three issues: (1) whether he made a clear and unequivocal assertion of his right to self-representation, (2) whether he knowingly, intelligently, and voluntarily waived his right to counsel, and (3) whether the trial court abused its discretion when it denied Dowell's request for standby counsel to deliver the final argument. Concerning Dowell's first claim the Court of Appeals concluded that Dowell made a clear and unequivocal request to proceed pro se. As for Dowell's second claim, the Court of Appeals concluded that Dowell's waiver of the right to counsel was not knowing, intelligent, and voluntary. Thus the court reversed Dowell's conviction and remanded the cause for a new trial. Acknowledging that "[a]lthough not necessary to our decision" the Court of Appeals nonetheless addressed Dowell's third claim. Dowell, 557 N.E.2d at 1067. Citing Koehler, the court noted the five factors the trial court should have considered and, as in Koehler, the court recited facts of record applicable to those factors. It then determined "[t]he trial court abused its discretion in summarily denying Dowell's request for stand-by counsel to conduct the closing argument." Id. at 1068.

At the time of Henley's direct appeal Koehler and Dowell were the only reported Indiana decisions addressing a claim of trial court error in summarily denying a pro se defendant's request for counsel after trial had begun. Assuming for the sake of discussion that appellate

8

counsel rendered deficient performance in not challenging the trial court's summary denial, the question remains whether this unraised issue "would have been clearly more likely to result in reversal or an order for a new trial." Bieghler, 690 N.E.2d at 194. The Court of Appeals answered the question affirmatively, apparently reasoning that a trial court's failure to consider the Koehler factors when ruling on a pro se defendant's request for counsel is per se reversible error.[6] For reasons discussed in more detail below, we disagree with our colleagues on this point. But we pause here to discuss a related issue.

Essentially, it is not at all clear that Henley was actually seeking to abandon his pro se defense and reassert his right to counsel. Thus there is a substantial question as to whether Koehler is even applicable in this case. The record shows that in the middle of the second day of the two-day trial Henley requested of the court, "I'd like [standby counsel] to cross examine the witnesses for me." Tr. at 722. The court inquired, "You would like for him to take over your case?" Id. Henley responded, "Not take over it, but to co-counsel with me." Id. After the trial court explained that hybrid representation was not permitted, Henley responded, "I still want to remain in charge of the case." Id. at 723. The trial court then denied Henley's request. Id. Minutes before Henley rested his case and before the State presented rebuttal testimony, the following colloquy occurred:

> [Trial Court]: Are we ready for the jury?
>
> [State]: Yes sir.
>
> [Standby Counsel]: Yes sir. You're going to have to tell the Judge before he brings the jury in. You will have to understand I decide the content, not you.
>
> [Trial Court]: Mr. Henley.
>
> [Defendant]: You decide the content?

---

[6] This view was expressed in Stamper v. State, 809 N.E.2d 352, 355 (Ind. Ct. App. 2004) ("In the case at bar, we first note that there is no indication in the record that the trial court considered the *Koehler* factors. *This alone supports reversal*.") (citing Dowell, 557 N.E.2d at 1068) (emphasis added). As discussed *infra* we disagree with this statement of the law. Further, Stamper was not the law at the time of Henley's direct appeal in 1999.

9

> [Standby Counsel]: I decide the content, not you.  If you want me to do it, I'll be happy to do it, but you need to tell the Judge what you want.

> [Defendant]: Go ahead, Your Honor.  Go ahead and proceed.

Tr. at 816.  Although the details are not altogether clear, it is apparent in this exchange that Henley wanted standby counsel to handle some portion of the defense while at the same time remaining in control of his case.  As indicated, the trial judge had previously advised Henley that hybrid representation was not permitted.  Further, just before presenting his closing argument, Henley informed the jury "[standby counsel] asked to share some of my time, I just want to make [a] brief statement."  Id. at 854.  The trial court interjected, "No, you're representing yourself, sir."  Id.  Again Henley was attempting hybrid representation.

Sandwiched between these events was Henley's request that standby counsel deliver closing argument.  Viewed in isolation, this request appears to be a clear effort by Henley to abandon his pro se defense and rely instead on trained counsel.  However, considering the context, the trial court very reasonably could have assumed that Henley was making yet another attempt at hybrid representation.  The law is settled that "[t]he Sixth Amendment does not require a trial judge to permit hybrid representation. . . ."  Sherwood v. State, 717 N.E.2d 131, 135 (Ind. 1999).  See also Myers v. State, 510 N.E.2d 1360, 1363 (Ind. 1987) ("This Court has refused to recognize a constitutional right to hybrid representation and a trial court may, in its discretion, deny a motion requesting creation of such a scheme.").  Indeed Henley acknowledges as much.  See Br. of Appellant at 10.  Because hybrid representation was not allowed, there would have been no need for the trial court to consider the "Koehler" factors in denying Henley's request.  Appellate counsel could not be deemed as rendering deficient performance for failing to advance such a claim.

In any event assuming that Henley's request could be interpreted as an effort to abandon his pro se defense after trial had begun and to reassert his right to counsel, his argument still fails.  First we do not read Koehler as standing for the proposition that the trial court's failure to consider certain factors before denying a pro se defendant's request for counsel is per se reversible error.  It is true that in Koehler the Court reversed the defendant's habitual offender

adjudication. But it did so only after examining the record, which showed that the five factors the trial court neglected to consider all weighed in favor of granting the defendant relief. The Court thus concluded, "[I]t was an abuse of discretion to refuse Koehler's request for counsel." Koehler, 499 N.E.2d at 199.

As for Dowell, we make two observations. One, the opinion did not say that the trial court's failure to consider the Koehler factors automatically resulted in reversible error. Rather, expanding on the language of Koehler the opinion declared, "The trial court abused its discretion in *summarily denying* Dowell's request for stand-by counsel to conduct the closing argument." Dowell, 557 N.E.2d at 1068 (emphasis added). Two, and more importantly, the portion of the opinion discussing this issue was, in the words of the court itself, "not necessary to our decision." Id. at 1067. "In appellate opinions, statements not necessary in the determination of the issues presented are *obiter dictum*. They are not binding and do not become the law." Koske v. Townsend Eng'g Co., 551 N.E.2d 437, 443 (Ind. 1990) (citation omitted).

In sum, at the time of Henley's direct appeal Koehler was the prevailing Indiana case authority in this area of the law. And Koehler teaches that where, without considering certain factors, the trial court denies a pro se defendant's request that counsel take over the defense after trial has begun, the appellate court will examine the record to determine whether the trial court has abused its discretion in refusing the request. We now examine the record and apply the factors as outlined in Koehler.

> *(1) Defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel-representation*:

Henley made the decision to proceed pro se before trial. But as discussed in more detail above, in the middle of trial he appeared to change his mind and requested that standby counsel serve as co-counsel. This factor weighs against the appointment of counsel.

> *(2) The reasons set forth for the request*:

11

Henley gave no reason for requesting that standby counsel deliver closing argument. However in an earlier request that counsel cross-examine witnesses, Henley advised the trial court that he was "up for two days [with] no sleep." Tr. at 721.[7] This is not a sufficient reason at this late stage in the proceeding. This factor also weighs against the appointment of counsel.

*(3) The length and state of the trial proceedings*:

It is true that Henley's request came at an opportune moment, after trial had concluded but before final summation had begun. This factor weighs in favor of the appointment of counsel.

*(4) Disruption or delay which reasonably might be expected to ensue from the granting of such motion*:

It is also true that the record does not indicate that allowing counsel to deliver closing argument would have created any delay. No continuance would have been necessary because standby counsel was familiar with the case. This factor also weighs in favor of the appointment of counsel.

*(5) The likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney*:

Although obviously not exhibiting the skills of a trained and experienced lawyer, Henley had not "failed miserably" as defense counsel during his trial. Koehler, 499 N.E.2d at 199. In an attempt to show discrepancies in the testimony of the State's police witnesses, Henley cross-examined them through the use of various police reports the officers had compiled, as well as through the use of their pre-trial depositions that had been taken by standby counsel. See, e.g.,

---

[7] At the post-conviction hearing Henley testified that his failure to understand final jury instructions prompted him to request that standby counsel deliver closing argument. P-Cr. at 132. The record shows that during the discussion on final jury instructions Henley expressed some confusion with some of the instructions and objected to others on grounds that he did not understand them. See Tr. at 773-809. However when requesting that standby counsel deliver closing argument Henley said nothing about jury instructions.

Tr. at 264, 383. Henley's apparent trial strategy was to show police brutality in removing him from the van, that his firing at the police dog was a matter of self-defense, and that he did not fire at the officers.[8] The record shows that to advance his strategy Henley for the most part asked relevant questions of the State's witnesses as well as the witness he called on his own behalf.

Final summation is not evidence but an opportunity to advance one's theory of the case. 16B Ind. Practice § 22.8(e) (2007) ("Within [certain] evidentiary limitations, a party may argue his or her theory of the case in closing arguments."). There was no reason to believe that Henley would have been any less able in pressing his claim in closing argument than he was during trial. This factor weighs against the appointment of counsel.

Considering the Koehler factors and weighing them against each other, we conclude that the trial court did not abuse its discretion in denying Henley's request for counsel. Consequently had appellate counsel raised this issue on appeal, his likelihood of success would have been virtually nonexistent. Stated somewhat differently, this unraised issue would not "have been clearly more likely to result in reversal or an order for a new trial." Beighler, 690 N.E.2d at 194 (quotation omitted). In this post-conviction proceeding, Henley has failed to show that appellate counsel rendered ineffective assistance on this issue.

Because the Court of Appeals found this issue dispositive, it did not address Henley's remaining claims. We do so now.

## II.

### *Failure to Consider Mental Retardation as a Mitigating Factor*

In sentencing Henley the trial court found the existence of four aggravating factors and no mitigating factors. Pointing to evidence presented at the post-conviction hearing that he is mentally retarded, Henley complains, "[A]ppellate counsel rendered ineffective assistance when

---

[8] At the post-conviction hearing Henley's standby counsel acknowledged that other than the attempted murder, he had "no real strategy" for responding to the remaining charges. P-Cr. at 43. Rather, according to counsel, he planned to highlight police brutality during the arrest. Id.

he failed to raise on direct appeal the trial court's failure to consider Henley's mental retardation as a mitigator at sentencing." Br. of Appellant at 18.

In preparation for the post-conviction hearing the defense team retained the services of Dr. David Cerling, a clinical psychologist. He opined that Henley was mildly mentally retarded, which "is considered to be a life-long condition." P-Cr. at 11. In reaching this opinion Dr. Cerling examined, among other documents, portions of the trial record, including several letters Henley had sent to the trial court while his case was pending, an elementary school assessment of Henley conducted in 1978, and a Social Security disability assessment conducted of Henley in 1990. Dr. Cerling also administered the Wechsler Adult Intelligence Scale-III test, on which Henley registered a full-scale score of 64. This score confirmed that Henley was in the "mild mentally retarded range." P-Cr. at 14.

But this evidence surfaced for the first time at the post-conviction hearing, some six years after Henley's trial. And apparently Henley was adept at concealing his limitations. Even Dr. Cerling acknowledged, "I would not have, if I had made a guess based on his verbal interaction, I would not have thought that this person is in that range of mild mental retardation." P-Cr. at 16. Noting that Henley could read and commenting on the level of Henley's verbal skills, standby counsel testified that he did not detect any mental retardation and it did not occur to him that Henley "might have been retarded." P-Cr. at 65-66. If it had occurred to him, according to standby counsel, "I would have filed a Notice of Mental Disease or Defect, whether [Henley] wanted me to or not." P-Cr. at 66. Appellate counsel likewise testified that he had no evidence that Henley was mentally retarded and no indication from Henley that he was receiving Social Security benefits.[9] In fact "Henley concedes that he did not tell [appellate counsel], or anyone else, that he was receiving Social Security benefits because of mental retardation." Br. of Appellant at 18.

---

[9] Henley counters that appellate counsel should have been on notice that he was receiving such benefits. In support Henley points to one of several letters that was offered, but which the court did not allow to be introduced, at the trial of Henley's girlfriend. In the letter Henley refers to "a check" he receives every month for his "mental illness." App. at 224. Other than to assert that appellate counsel was representing Henley at the time of his girlfriend's trial, Henley does not explain why appellate counsel would have been aware of the existence of this correspondence. The letter is not a part of Henley's trial record. And the law is clear that "there is no constitutional requirement for appellate counsel to search outside the record for error." Stephenson v. State, 864 N.E.2d 1022, 1041 (Ind. 2007).

As he did throughout the trial, Henley represented himself at the sentencing hearing. In mitigation Henley argued he was under the influence of drugs and alcohol when the crimes were committed, that he was highly emotional, and he was suffering from "deep depression" which altered his thinking. Tr. at 958-59. Before his argument and in response to the trial court's inquiry, Henley made several additions and corrections to his pre-sentence report. Significantly, Henley objected to the accuracy of a section of the report that indicated he had received mental health treatment. Henley was adamant, "I never seen anyone for a mental health as to a referral to see a psychiatrist, or a psychologist, so that is not true. I want to have that changed. . . ." Tr. at 948.

It is clear that the trial court did not consider Henley's mental retardation as a mitigating factor because no such claim was presented to the trial court. "If the defendant does not advance a factor to be mitigating at sentencing, this Court will presume that the factor is not significant and the defendant is precluded from advancing it as a mitigating circumstance for the first time on appeal." Spears v. State, 735 N.E.2d 1161, 1167 (Ind. 2000). Appellate counsel cannot have rendered ineffective assistance for failing to do that which he is prohibited from doing.[10]

---

[10] An underlying theme permeating this case is whether a mentally retarded defendant has the capacity to waive counsel and conduct his own defense. The United States Supreme Court has determined that a defendant is competent to stand trial if he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has a "rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam). In Godinez v. Moran, 509 U.S. 389, 391 (1993), the Supreme Court reaffirmed the Dusky standard and held that the standard of competence to waive the right to counsel is the same as the standard of competence to stand trial. On December 7, 2007, the Supreme Court granted certiorari to the State of Indiana in Edwards v. State, 866 N.E.2d 252 (Ind. 2007) (reversing conviction of mentally ill defendant who was denied the Sixth Amendment right to self-representation). See Indiana v. Edwards, 128 S.Ct. 741 (2007). The question presented in the petition for certiorari is: May States adopt a higher standard for measuring competency to represent oneself at trial than for measuring competency to stand trial? The outcome of Edwards may have a bearing on our analysis in this case. But we are bound by the present state of the law, which declares that competency to represent oneself at trial is measured by competency to stand trial. Godinez, 509 U.S. at 402. In the case before us Dr. Cerling noted that he did not intentionally assess Henley's competency to stand trial. However he was of the opinion that Henley did "have a rational understanding of what was going on in terms of being able to communicate with his attorney." P-Cr. at 24. Dr. Cerling further elaborated, "My sense would be that he has a factual and a rational understanding of, you know, the principles, the procedures, . . . and I certainly think he's motivated to act in his best interest so, you know, I certainly think that in most ways, I would guess if I was doing a competence evaluation, most likely I would think that he would be [competent to stand trial]." Id. at 31. Henley concedes that he was "competent to waive counsel and represent himself in spite of his mental retardation." Br. of Appellant at 22. We are compelled to agree.

## III.

### *Sufficiency of the Evidence*

On direct appeal counsel raised the issue of whether the evidence was sufficient to support Henley's attempted murder conviction. In the summary of the argument section, counsel provided the following:

> To assist the Court in avoiding a miscarriage of justice, without invading the province of the jury by weighing the evidence Henley would show the Court that certain testimonial errors have occurred resulting from imperfect recollection, defective perception, speculation, and/or suggestion as to the crime of attempted murder, and that (1) such testimony is the only testimony of Henley's guilt, and (2) such testimony falls short of proof of guilt beyond a reasonable doubt sufficient to support the guilty verdicts.

App. at 169. Because counsel provided no further analysis on this issue, failed to cite any legal authority, and failed to cite the relevant portion of the record, the Court of Appeals declined to address the issue on grounds of waiver. Henley argues appellate counsel rendered ineffective assistance in raising but failing to present cogent argument to challenge the evidence supporting the attempted murder conviction.

We recite our familiar standard for reviewing the sufficiency of the evidence needed to support a criminal conviction. For such claims we neither reweigh evidence nor judge witness credibility. Perry v. State, 638 N.E.2d 1236, 1242 (Ind. 1994). We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence. Taylor v. State, 681 N.E.2d 1105, 1110 (Ind. 1997). We will affirm a conviction if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id.

Henley was charged with the attempted murder of Evansville Police Officer David Molinet. The evidence most favorable to the verdict shows that pursued by police Henley hid inside a van. The back left hand door of the van was closed but the right hand door was off its hinges. A German Shepard police dog that was tracking Henley jumped into the back of the van.

16

The dog was on a fifteen-foot leash that was controlled by his handler, Officer Molinet. Henley fired four shots in rapid succession. The dog yelped at the second shot and was never heard from again. He had been shot in the right shoulder through the heart. Hearing the gunfire Officer Molinet, who was on the outside of the van, took cover and began shouting orders for the gunman to put down his weapon, raise his hands, and come out of the van. No other shots were fired, but Henley did not comply. Other officers who arrived on the scene eventually pulled him out of the van. Officers recovered a .38 caliber Titan revolver containing five spent shell casings and one live shell.

There was no evidence presented that Henley was aware of the police presence when he fired his weapon. Officer Molinet testified that not knowing Henley was in the van he gave "no commands at all." Tr. at 408. Nor was there testimony that the shots Henley fired "whizzed" past the officers. Rather the most relevant evidence concerning Henley's intent to kill came from Officer Molinet's testimony that he "heard a pop, and pop, pop, pop, and saw three more muzzle flashes just coming back at both of us, you know, me and Derrek [the police dog]." Id. at 409. But other than the muzzle flashes Officer Molinet testified that he could not see the individual because it was "pitch black." Tr. at 411; see also Tr. at 724 (Another officer testified "we couldn't see his hands.").

A conviction for attempted murder requires proof of a specific intent to kill. Bethel v. State, 730 N.E.2d 1242, 1245 (Ind. 2000). Because intent is a mental state, we have noted that intent to kill may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or serious injury. Wilson v. State, 697 N.E.2d 466, 476 (Ind. 1998). And firing a gun in the direction of an individual is substantial evidence from which a jury may infer intent to kill. Jones v. State, 536 N.E.2d 267, 270 (Ind. 1989). But in cases where we have affirmed convictions for attempted murder, the evidence of intent to kill was far more compelling than exists here. See, e.g., Shelton v. State, 602 N.E.2d 1017, 1021 (Ind. 1992) (Defendant pointed handgun at victim and shot him twice from a distance of twelve and thirty feet.); Davis v. State, 558 N.E.2d 811, 811 (Ind. 1990) (Defendant ran from police, turned, and fired a shot which struck an automobile directly behind the police officer.); Parks v. State, 513 N.E.2d 170, 171 (Ind. 1987) (Defendant pointed a loaded shotgun at the officer's midsection and said, "You're

17

dead.”); Brumbaugh v. State, 491 N.E.2d 983, 984 (Ind. 1986) (Defendant fired a shotgun at a police helicopter and an officer testified that a shot “whizzed” by his head.); Conley v. State, 445 N.E.2d 103, 105 (Ind. 1983) (Defendant fired at police officer striking the radiator of the patrol car that acted as shield.).

The evidence in this case reveals that Henley was attempting to ward off what he perceived was an attack by a large dog. He would later argue to the jury that the police dog was a “lethal” and “deadly weapon,” Tr. at 858, and “I was protecting, defending myself, or the dog’s going to kill me.” Tr. at 861. The jury rejected this argument and found Henley guilty of Class D felony criminal mischief. But the record is simply devoid of any probative evidence that Henley was pointing his firearm at Officer Molinet when he fired the weapon. We are compelled to conclude that Henley’s intent to kill Officer Molinet was not established beyond a reasonable doubt.

Claims of inadequate presentation of certain issues, as contrasted with the denial of access to an appeal or waiver of issues, are the most difficult for defendants to advance and reviewing tribunals to support. Bieghler, 690 N.E.2d at 195. And this is so because such claims essentially require the reviewing court to reexamine and take another look at specific issues it has already adjudicated to determine “whether the new record citations, case references, or arguments would have had any marginal effect on their previous decision.” Id.

In this case the Court of Appeals on direct review did not actually adjudicate Henley’s sufficiency of the evidence claim. This was so because although appellate counsel presented the issue, he did such a poor job that the court declined to address the claim on grounds of waiver. We are persuaded that had appellate counsel presented cogent argument with citation to relevant authority challenging the sufficiency of the evidence to support the attempted murder conviction, the outcome of the appeal would have been different, namely, the conviction would have been reversed. Therefore, appellate counsel rendered ineffective assistance presenting this claim.

## Conclusion

The post-conviction court concluded that appellate counsel did not render ineffective assistance concerning Henley's claim of insufficient evidence to support the attempted murder conviction. We disagree and reverse the post-conviction court on this issue. This cause is remanded with instructions to vacate Henley's conviction for attempted murder and the sentence imposed thereon. In all other respects the judgment of the post-conviction court is affirmed.

Shepard, C.J., and Dickson, Sullivan and Boehm, JJ., concur.