**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 12 2014, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRUCE W. GRAHAM**
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JEFF LEATH,                                )
                                           )
    Appellant-Defendant,         )
                                           )
        vs.          )    No. 79A05-1404-CR-149
                                           )
STATE OF INDIANA,                          )
                                           )
    Appellee-Plaintiff.          )

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Thomas H. Busch, Judge
Cause No. 79D02-1309-FD-6

**November 12, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

Jeff Leath appeals his conviction for class D felony unlawful sale of a precursor, arguing that the evidence is insufficient to support his conviction. We affirm.

## Facts and Procedural History

The facts most favorable to the verdict show that in September 2013, Leath had known Aaron and Barbara Tague for about five months. The Tagues were addicted to methamphetamine. Leath knew that they were meth users. The Tagues had used meth at Leath's home. Sometimes, the Tagues paid Leath $30 to $40 or gave him synthetic marijuana to buy pseudoephedrine. Leath knew that pseudoephedrine was used to make meth.

On September 3, 2013, the Tagues offered Leath $40 to buy a package of pseudoephedrine for them. Aaron and Barbara could not purchase pseudoephedrine themselves because both had already purchased the thirty-day maximum permitted by law.[1] The Tagues drove their red Pacifica to pick up Leath and Trinity York. Barbara was high on meth and heroin, which she was also addicted to. Aaron had also used meth that day.

The Tagues drove Leath and York to a West Lafayette pharmacy. Barbara gave money to Leath to buy pseudoephedrine. He went into the pharmacy and bought a box of pseudoephedrine. He gave Barbara the package, and she removed the two blister packs and put them in her purse. Barbara gave York money to buy pseudoephedrine. He went into the

---

[1] The sale and purchase of pseudoephedrine is regulated pursuant to Indiana Code Section 35-48-4-14.7.

2

pharmacy and bought a box of pseudoephedrine. Barbara put the two blister packs from York's purchase in her purse.

During this time, Officer Jonathan Morgan was in his patrol car across from the pharmacy monitoring the National Precursor Log Exchange ("NPLEx"), a database that tracks and stores purchases of pseudoephedrine. Using the NPLEx database, Officer Morgan saw that at approximately 9:47 p.m., Leath purchased a package of pseudoephedrine. The NPLEx database also showed that Leath had purchased or attempted to purchase pseudoephedrine five times since July 13, 2013, and that his most recent attempt had been blocked because he had already purchased the maximum permitted by law. State's Ex. 1. At approximately 10:02 p.m., the NPLEx database revealed that York bought a package of pseudoephedrine. Officer Morgan saw York exit the pharmacy and get into a red Pacifica. When the Pacifica drove away, Officer Morgan followed. He observed the car weaving in its lane and speeding. He activated his lights and stopped the Pacifica. Officer Morgan requested and received identification from all the vehicle's occupants. Aaron was driving, York was in the front passenger seat, Barbara and her seventeen-month-old child were in the second-row seat, and Leath was in the third-row seat. Officer Morgan recognized York and Leath as the men he had seen leaving the pharmacy.

A drug detection canine team arrived to assist Officer Morgan. An officer conducted a dog sniff around the exterior of the vehicle. While the dog was led around the car, Officer Morgan asked Aaron to step out of the car and patted him down for weapons. Officer Morgan discovered a bag of marijuana in Aaron's pocket. Another officer patted down York

and found a bag of synthetic marijuana. Meanwhile, the dog alerted to the presence of drugs in the Pacifica, and police began to search the vehicle. In Barbara's purse, they found four blister packs of pseudoephedrine. Two empty boxes of pseudoephedrine were lying on the seat. In a diaper bag, police found two hypodermic needles, a small bag of meth, and a small amount of marijuana. In a compartment behind the third-row seat, police found some glass Mason jars and a Tupperware container that held coffee filters and paper towels emitting a strong chemical odor associated with the manufacture of meth.[2] Police were concerned that the chemical odor had posed a health danger to the child and therefore transported the child to a medical facility for evaluation.

The State charged Leath with class D felony unlawful sale of a precursor. At trial, Barbara testified that Leath bought the pseudoephedrine for her so that she could trade it for heroin or meth. Leath testified that he was neither a meth user nor a manufacturer and that he had no idea what was in the Pacifica. He also testified that he had allergies. The jury found Leath guilty as charged. He appeals.

**Discussion and Decision**

Leath asserts that the evidence is insufficient to support his conviction. Our standard of review is well settled:

> [When] reviewing the sufficiency of the evidence needed to support a criminal conviction[,] ... we neither reweigh evidence nor judge witness credibility. We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence. We will affirm a conviction

---

[2] The State mistakenly asserts that these materials were "[i]n the back seat of the car, where [Leath] had been sitting," and that "[Leath] sat next to materials." Appellee's Br. at 4, 8.

if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt.

*Henley v. State*, 881 N.E.2d 639, 652 (Ind. 2008) (citations omitted).

To convict Leath of class D felony unlawful sale of a precursor, the State was required to prove beyond a reasonable doubt that he sold, transferred, distributed, or furnished a chemical reagent or precursor[3] to Barbara and/or Aaron with knowledge or intent that the recipient would use it to manufacture a controlled substance.[4] Ind. Code § 35-48-4-14.5(g); Appellant's App. at 9. "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." *Id*.

Leath argues that while the evidence may be sufficient to show that he knew that the pseudoephedrine would eventually be transferred to someone who would use it to manufacture meth, it is insufficient to establish that he knew that the recipient, Barbara and/or Aaron, would use it to manufacture meth. Leath's argument relies heavily on Barbara's testimony that she was going to trade the pseudoephedrine for heroin or meth. To the extent that Barbara's testimony bears on Leath's knowledge, the jury was free to disregard her testimony in favor of the State's circumstantial evidence. Here, the evidence showed that the Tagues used meth in Leath's home; Leath knew that the Tagues were meth

---

[3] Pseudoephedrine is as a chemical reagent or precursor. Ind. Code § 35-48-4-14.5(a)(2).

[4] Methamphetamine is a schedule II controlled substance. Ind. Code § 35-48-2-6(d)(2).

users; and he knew that pseudoephedrine is used to make meth. The evidence also showed that Barbara had paid Leath to buy pseudoephedrine before this offense and that within the two-month period that included the current offense, Leath had purchased or attempted to purchase pseudoephedrine five times. One of those purchases had been blocked because he had exceeded his purchase limit. Finally, the State showed that Leath was sitting in the vehicle's third-row seat near materials that were linked to the manufacture of meth. These materials gave off such a strong chemical odor that Officer Morgan was concerned for the health of the child in the vehicle. From this evidence, a reasonable jury could find beyond a reasonable doubt that Leath was aware of a high probability that the Tagues were going to use the pseudoephedrine that he gave them to make meth. We conclude that the evidence is sufficient and therefore affirm Leath's conviction.

Affirmed.

RILEY, J., and MATHIAS, J., concur.