## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 25 2018, 9:40 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher L. Clerc
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Assistant Section Chief, Criminal
Appeals
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Amanda L. Zeigler, *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff*. | July 25, 2018 <br><br> Court of Appeals Case No. 03A01-1711-CR-2781 <br><br> Appeal from the Bartholomew Circuit Court <br><br> The Honorable Kelly S. Benjamin, Judge <br><br> Trial Court Cause No. 03C01-1707-F6-3739 |

**Brown, Judge.**

[1] Amanda L. Zeigler appeals her sentence for unlawful possession of a syringe as a level 6 felony. Zeigler raises one issue which we restate as whether the trial court abused its discretion in sentencing her. We affirm.

*Facts and Procedural History*

[2] On July 7, 2017, the State charged Zeigler with unlawful possession of a syringe and maintaining a common nuisance as level 6 felonies and possession of paraphernalia as a class C misdemeanor.

[3] On September 11, 2017, the court held a hearing at which Zeigler pled guilty to unlawful possession of a syringe as a level 6 felony.[1] The court entered an order finding there was a basis in fact for Zeigler's plea of guilty, stating that it would take the matter under advisement, and noting that Zeigler indicated she did not want to be evaluated for the WRAP Program.

[4] On October 19, 2017, the court held a hearing at which Zeigler's mother, Sarah Dorn, testified in part that Zeigler went to a treatment facility in Florida for a thirty-day program but that it "was not sufficient" to change her. Transcript Volume II at 11. She also stated that she thought the WRAP Program would be very beneficial and she was upset Zeigler had turned down the program. After a brief recess, the court indicated that it had a discussion regarding the WRAP Program and asked Zeigler's counsel if there was any change, and Zeigler's counsel stated: "I've spoken with my client about the WRAP Program

---

[1] The record does not contain a copy of the transcript of this hearing.

and she still indicates she has no desire to do the program." *Id.* at 17. The court ordered that Zeigler be evaluated for the WRAP Program.

On November 2, 2017, the court continued the sentencing hearing and stated that it had received a response from the WRAP Program indicating that Zeigler could benefit from the program. Zeigler stated that she was willing to participate in the WRAP Program and stated: "Thank you for saving my life and I got myself back and my body back and I wouldn't be here today probably if you didn't make me sit in here, so thank you." *Id.* at 22. When asked on cross-examination if she had the right attitude for the WRAP Program, she answered: "I'm trying to." *Id.* at 23. When asked if the court should place her in the WRAP Program, she answered: "Sure." *Id.* The prosecutor argued that she did not sense any real commitment from Zeigler and was concerned about the integrity of the WRAP Program and the effect Zeigler's participation may have on other participants. The court stated:

> Ms. Zeigler, you certainly don't make this easy. I would like to believe what you just said to me is what you really think. I'm not convinced of that. You can't thank me because I can't do anything about it. I didn't save your life. Those who are going to save your life, you need to look in a mirror. Once you realize that that I can't do it, he can't do it, she can't do it, and they can't do it. That's when it becomes real and so I completely understand [the prosecutor's] position because you will be in with other people who want to get better, who believe they need to be there and so then I have to sit here and think of is it your brain controlling this or are you still under that, which is more than likely, brain of I don't need help, I'm going to get out, I can handle this on my own, no one is going to tell me what to do and

your judgment is still flawed. I don't know. Some people get nervous when they get on the stand and they react in different ways. You may it [sic] very hard to read and very hard to trust. It's not a game.

I can tell you for the four people sitting in the gallery, I think they completely get it, it's really about life and death. I'm not sure you get that.

I recall telling you last time I wasn't giving up on you. . . . The Court will note that she does have a . . . only a prior criminal history of one conviction of Illegal Consumption, A Misdemeanor. On probation one time before. A Petition to Revoke filed once. She is young and has a limited criminal history. Those are mitigating factors. An aggravating factor specific to this case is my concern regarding her attitude and her commitment and passion to help herself.

*Id.* at 24-25.

[6] The court sentenced Zeigler to the Bartholomew County Jail for 730 days, ordered that she serve 296 days, gave her credit for 118 days, suspended 434 days, and ordered that she serve probation for a period of 547 days upon release. The court stated:

That's going to give you a little extra time to sit in jail before I do place you in the WRAP Program to think about what your attitude is going to be when you go in with other people who are trying to save their own lives and are serious about it and make sure you are serious about it. If there's an opening in the WRAP Program and they deem it appropriate prior to the end of that jail term, I will approve you being transferred to WRAP when that . . . that opens up. But that would give you approximately an additional 33 days to serve. But if the bed does open up, they can place you in there earlier if that happens.

*Id.* at 26.

On November 13, 2017, the court held a hearing and stated it received a letter on November 8, 2017, reportedly signed by Zeigler stating that she felt coerced into the WRAP Program. Upon questioning by her counsel, Zeigler testified that she was willing to participate in the WRAP Program, that "[i]t's 30 days to go down to WRAP and then a year in WRAP and then four hundred and some odd days to see . . . Community Corrections after I complete WRAP," and she was objecting to "[t]he excess time after WRAP." *Id.* at 31. The court entered an order amending the sentencing order "to reflect that if [Zeigler] violates while in the WRAP Program, the Court authorizes Community Corrections to place [her] back in jail until a hearing is held." Appellant's Appendix Volume II at 7.

### *Discussion*

The issue is whether the trial court abused its discretion in sentencing Zeigler. We review the sentence for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly

supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." *Id.* at 490-491. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491. The relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. *Id.*

Zeigler argues that the trial court abused its discretion when it failed to consider her admissions to police and guilty plea as significant mitigating factors. She asserts that she chose to speak with police, admitted that she provided narcotics to people, and did not receive any benefit from her admissions and cooperation with the investigation. The affidavit signed by Columbus Police Detective Kelly Hibbs and cited by Zeigler on appeal states that the Bartholomew County Joint Narcotics Enforcement Team received information that Zeigler was selling narcotics out of her apartment and officers executed a search warrant and discovered Zeigler in her apartment with pieces of aluminum foil, a spoon with residue on it, and syringes in her bedroom. Detective Hibbs's affidavit also indicates that she agreed to speak with police and that Zeigler admitted that sometimes people would come to her apartment, she would give them narcotics, and she was a heroin user.

The State argues that Zeigler fails to show that her guilty plea warrants significant mitigating consideration, she received a substantial benefit by

pleading guilty, and the evidence against her was overwhelming. It also argues that she waived her argument regarding her cooperation with police and that, waiver notwithstanding, her admissions to police did not warrant significant mitigating weight. It contends that, even if the trial court abused its discretion, remand is not necessary because this Court can be confident that the trial court would have imposed the same sentence in light of the thoughtful sentence involving various degrees of confinement and treatment programs.

[11] The determination of mitigating circumstances is within the discretion of the trial court. *Rogers v. State*, 878 N.E.2d 269, 272 (Ind. Ct. App. 2007), *trans. denied*. The court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor, and the court is not required to give the same weight to proffered mitigating factors as does a defendant. *Id.* An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493. If the court does not find the existence of a mitigating factor after it has been argued by counsel, it is not obligated to explain why it has found that the factor does not exist. *Id.*

[12] As for Zeigler's assertion that she provided cooperation to the police, we note that she did not advance this as a mitigator to the trial court. "If the defendant does not advance a factor to be mitigating at sentencing, this Court will presume that the factor is not significant and the defendant is precluded from advancing it as a mitigating circumstance for the first time on appeal." *Henley v.*

*State*, 881 N.E.2d 639, 651 (Ind. 2008) (quoting *Spears v. State*, 735 N.E.2d 1161, 1167 (Ind. 2000), *reh'g denied*).

[13] However, even though Zeigler did not raise her guilty plea as a mitigating factor at sentencing, it can still be raised for the first time on appeal. *See Anglemyer*, 875 N.E.2d at 220 (observing that the general proposition that a trial court does not abuse its discretion in failing to consider a mitigating factor that was not raised at sentencing "has at least one important exception, namely: pleas of guilty").

[14] A defendant who pleads guilty deserves some mitigating weight be given to the plea in return. *Id.* "But an allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is not only supported by the record but also that the mitigating evidence is significant." *Id.* at 220-221. The significance of a guilty plea as a mitigating factor varies from case to case. *Id.* For example, a guilty plea may not be significantly mitigating when it does not demonstrate the defendant's acceptance of responsibility or when the defendant receives a substantial benefit in return for the plea. *Id.*

[15] The plea agreement here was more likely the result of pragmatism than acceptance of responsibility and remorse. The record reveals that the State dismissed the charges of maintaining a common nuisance as a level 6 felony and possession of paraphernalia as a class C misdemeanor in exchange for Zeigler's plea. In light of this benefit and her statements to police that she gave

people narcotics, we cannot say that Zeigler has demonstrated that her guilty plea was a significant mitigating circumstance or that the trial court abused its discretion.

## *Conclusion*

[16] For the foregoing reasons, we affirm Zeigler's sentence.

[17] Affirmed.

Pyle, J., and Altice, J., concur.