## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 13 2020, 8:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Marielena Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Myriam Serrano
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kahala Jamal Wright, *Appellant-Defendant,* | July 13, 2020 |
| | Court of Appeals Case No. 20A-CR-17 |
| v. | Appeal from the St. Joseph Superior Court |
| State of Indiana, *Appellee-Plaintiff* | The Honorable Elizabeth C. Hurley, Judge |
| | Trial Court Cause No. 71D08-1805-F1-10 |

**Vaidik, Judge.**

# Case Summary

[1] Kahala Jamal Wright appeals his two convictions for Level 1 felony attempted murder and his criminal gang sentencing enhancement. He argues that the trial court erred in admitting evidence that he was a member of a gang and that the evidence is insufficient to establish that he acted with the specific intent to kill and to support the criminal gang sentencing enhancement. We affirm.

# Facts and Procedural History

[2] In May 2018, Aleatha Carter, her children—J.S., D.S., and C.G.—and her wife, Torkika Tibbs, lived on Miami Street on the southeast side of South Bend. They used to live on the west side of South Bend but moved to Miami Street sometime in 2017. There are neighborhood and gang rivalries between people from these two parts of town.

[3] Around noon on May 2, J.S. and sixteen-year-old D.S. walked to Stop N Go, a gas station about half a block from their house. Before they reached the gas station, J.S. and D.S. noticed eighteen-year-old Wright and seventeen-year-old Daquoine Harriston[1] walking toward them. J.S. knew Wright and Harriston "from Facebook." Tr. Vol. II p. 116. Wright and Harriston, who were members of a gang called "Southeast Side" or "Loose Screws," made "direct[] eye

---

[1] Harriston was convicted of two counts of Level 1 felony attempted murder in connection with this case and was sentenced to fifty years. *See Harriston v. State*, 19A-CR-1059 (Ind. Ct. App. Dec. 6, 2019).

contact" with J.S. and D.S. *Id.* at 93. D.S.'s instinct was to turn around and walk back home, because he had "other incidents at the gas station prior" with "people from the southeast side." *Id.* at 93, 104. According to D.S., people from the west side "shouldn't" go to a gas station on the southeast side. *Id.* at 93. J.S. and D.S. turned around to walk back home. On their way back, they glanced behind them and saw Wright and Harriston following them. Wright lifted his shirt to reveal a gun in his waistband. Wright asked J.S. if she had a problem, and J.S. responded by asking him if he had a problem. *Id.* at 110-11.

[4] When they got home, J.S. went inside to get her mother. D.S. and C.G. were on the porch when Wright and Harriston stopped in the street about halfway between the gas station and their house, and one of them asked, "What ya'll on," meaning "what ya'll trying to do?" *Id.* at 94. Wright and Harriston made shooting gestures with their hands and "thr[e]w their gang [signs] up." *Id.* at 85. In response, C.G. yelled, "F screw gang." *Id.* at 89.

[5] Aleatha, Torkika, and J.S. joined D.S. and C.G. on the porch. As they looked toward the gas station for Wright and Harriston, Torkika saw them "r[u]n out of nowhere" from the opposite direction. *Id.* at 73. Torkika yelled "they're about to shoot." *Id.* At about the same time, Aleatha heard Wright and Harriston yell "Loose screws, screw gang." *Id.* at 46. Wright and Harriston started shooting, and everyone except Aleatha ran inside the house. When the shooting stopped, they realized that J.S. had been shot in her arm, and she was taken to the hospital.

[6] South Bend Police Department officers arrived shortly thereafter and observed bullet holes in the windows on the porch and recovered fourteen shell casings from where Wright and Harriston had been shooting. In addition, they found fragmented projectiles in the flower bed in front of the porch, in the living-room wall, in the entry area near the carpet, and in the living-room floor. Officers found no evidence that shots had been fired from the house toward Wright and Harriston.

[7] On May 14, 2018, the State charged Wright with two counts of Level 1 felony attempted murder, one count for J.S. (Count I) and one count for D.S. (Count II). For Count II, the State filed a criminal gang sentencing enhancement, which alleges that Wright was a member of a criminal gang at the time of the offense and that he committed the offense at the direction of or in affiliation with the gang. *See* Appellant's App. Vol. II p. 7; Ind. Code § 35-50-2-15.

[8] After Wright was charged, officers could not find him. Aided by the U.S. Marshals Task Force, they found Wright in October 2018. Officers then interviewed him on October 5. During the interview, Wright first denied being involved in the shooting; however, he later admitted that he shot at J.S. and D.S. but only after D.S. shot at him first. Ex. 201.

[9] Before trial, the State filed a Notice of Intent to Use 404(b) Evidence. Appellant's App. Vol. II pp. 33-36. Specifically, the State sought to introduce the following evidence:

> a. That prior to and on May 2, 2018, there existed a criminal street gang in South Bend, Indiana, known as "Southeast Side" or "Loose Screws."
>
> b. That the Defendant, Kahala Wright, is a member of the "Southeast Side" or "Loose Screws."

*Id.* at 33. Wright opposed the State's motion. The trial court ruled on the State's motion just before the jury trial started, finding the State could present evidence that Wright was a member of Southeast Side or Loose Screws. The court reasoned that evidence that Wright was a member of the gang was relevant to prove motive. *See* Tr. Vol. II p. 3. The court acknowledged that the evidence was prejudicial but found that the probative value of the evidence outweighed its prejudicial effect. *Id.* The court, however, asked the State to limit the gang evidence "[t]o the extent that it can be limited." *Id.* at 4.

[10] During trial, South Bend Police Department Officer Kyle Dombrowski testified that he was a member of the department's Strategic Focus Unit, which concentrates on gang activity. Officer Dombrowski explained that Loose Screws operates out of the southeast side of South Bend and there is a "beef" or "feud" between the southeast side and the west side. Tr. Vol. III p. 38. The prosecutor showed Officer Dombrowski several photos from Wright's social-media pages, and Officer Dombrowski explained how the photos proved Wright was affiliated with Loose Screws.

[11] The jury found Wright guilty on Counts I and II and that the criminal gang sentencing enhancement applied. The trial court sentenced Wright to twenty

years on Count I and forty years on Count II—a base sentence of twenty years plus another twenty years for the criminal gang sentencing enhancement. The court ordered Counts I and II to be served concurrently, for a total sentence of forty years.

Wright now appeals.

# Discussion and Decision

## I. Evidence of Gang Membership

Wright first contends that the trial court erred in admitting evidence he was a member of a gang to prove motive. We review a trial court's admission or exclusion of evidence for an abuse of discretion. *Fansler v. State*, 100 N.E.3d 250, 253 (Ind. 2018).

Indiana Evidence Rule 404(b) provides that evidence of a crime, wrong, or other act "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but it "may be admissible for another purpose, such as proving motive . . . ." Evidence of a defendant's motive is always relevant in the proof of a crime. *Turner v. State*, 953 N.E.2d 1039, 1057 (Ind. 2011). As Wright himself acknowledges on appeal, membership in or involvement with a gang can be highly probative of a defendant's motive for committing a crime. *Williams v. State*, 690 N.E.2d 162, 173 (Ind. 1997). But according to Wright, the problem in this case is that "absolutely no evidence was admitted showing either J.S. or

[D.S.] were members of a rival gang on May 2, 2018 or had been members of a rival gang prior to that date." Appellant's Br. p. 10.

[15] While no evidence was admitted that J.S. or D.S. were **members** of a rival gang, plenty of evidence was admitted that J.S. and D.S. were **associated** with a rival territory. J.S. and D.S. had recently moved from the west side to the southeast side, and by all accounts there was a rivalry between these two parts of town. D.S. testified that people from the west side "shouldn't" go to a gas station on the southeast side and that he had previous incidents at the gas station with people from the southeast side. In addition, Officer Dombrowski testified there was a "beef" or "feud" between the two parts of town. Moreover, it is apparent that Wright and Harriston viewed J.S. or D.S. as being members of or associated with a rival gang, given the fact that they flashed gang signs and yelled "Loose screws, screw gang" before opening fire. The trial court did not abuse its discretion in admitting evidence that Wright was a member of a gang to prove motive.

## II. Specific Intent to Kill

[16] Our resolution of the first issue is fatal to Wright's second argument, which is that the State failed to prove specific intent. *See Henley v. State*, 881 N.E.2d 639, 652 (Ind. 2008) (stating that a conviction for attempted murder requires proof of specific intent to kill). Wright's argument in this regard assumes that we agreed with him that the gang-membership evidence should not have been admitted and should be disregarded. *See* Appellant's Br. p. 11 ("Absent [evidence that

Wright was a member of a gang] there was no evidence that Wright had the required specific intent to kill anyone in the residence at Miami Street.").

[17] Nevertheless, even if we disregarded the gang-membership evidence, we would still affirm on this issue. Because intent is a mental state, intent to kill may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or serious injury. *Henley*, 881 N.E.2d at 652. And firing a gun in the direction of an individual is substantial evidence from which a jury may infer intent to kill. *Id.*

[18] Here, the evidence shows that as Wright and Harriston followed J.S. and D.S. home from the gas station, Wright showed them a gun in his waistband. Wright and J.S. exchanged words before J.S. went inside to get her mother. Wright and Harriston briefly disappeared before reappearing from the opposite direction. They then fired approximately fourteen shots at J.S., D.S., and their family while they were on the porch, shattering windows behind them. One of the shots hit J.S. in the arm. This evidence is sufficient to prove that Wright acted with the specific intent to kill J.S. and D.S.

## III. Criminal Gang Sentencing Enhancement

[19] Finally, Wright contends that the evidence is insufficient to establish the criminal gang sentencing enhancement because there is no evidence that he committed the offense "at the direction of or in affiliation with a criminal organization." I.C. § 35-50-2-15(b)(2)(A). Specifically, Wright argues that "there is no evidence that Wright was acting in concert with anyone associated

with a criminal gang." Appellant's Br. p. 15. But as explained above, evidence was presented that J.S. and D.S. had recently moved from the west side to the southeast side and that there was a rivalry between these two parts of town. On the day of the shooting, J.S. and D.S. were walking to a gas station on the southeast side when Wright and Harriston made direct eye contact with them and followed them home. Wright and Harriston then flashed gang signs and yelled "Loose screws, screw gang" before opening fire. This evidence is sufficient to establish that Wright committed the offense at the direction of or in affiliation with Loose Screws.

[20] Affirmed.

May, J., and Robb, J., concur.