**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**JOHN A. ENGLAND**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

FILED
Apr 30 2012, 9:27 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL E. KIRK, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1111-PC-609 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
The Honorable Steven J. Rubick, Magistrate
Cause No. 49G01-0505-FA-78294

**April 30, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Michael Kirk was convicted of multiple sex offenses for acts that he committed against his stepdaughter over a period of many months preceding March 2005. Based on the sentencing statutes in effect at the time, the trial court weighed aggravating and mitigating factors, found them to balance out, and imposed the presumptive sentences on each count. However, the trial court also found that the sentence for one of the class A felony counts should run consecutive to another and imposed a total sentence of sixty years.

On direct appeal, Kirk did not challenge his sentence, but instead challenged only the trial court's decision to admit evidence of uncharged sex acts. After losing his appeal, he filed a petition for post-conviction relief ("PCR"), arguing that his appellate attorney provided ineffective assistance of counsel for failing to challenge his consecutive sentences. The post-conviction court denied his petition, and he now appeals. Finding that he has failed to establish that his appellate counsel performed deficiently and that he therefore was not denied his constitutional right to effective assistance of counsel, we affirm.

**Facts and Procedural History**

Another panel of this Court described the facts as follows in a memorandum decision on Kirk's direct appeal:

> On May 11, 2005, Kirk was charged with three counts of [class A felony] child molestation and two counts of [class D felony] child solicitation stemming from abuse of his two stepdaughters, Ti.P. and Ta.P. At the start of the trial, Kirk asked that all mention of other uncharged bad acts not be admitted. This oral motion in limine was granted as to acts concerning drug abuse, physical abuse, and molestation of another girl, but was denied as to other acts dealing with the abuse of Ti.P. The court noted that the charges spanned a three-year period and that it is common in such cases of recurring

2

abuse for a victim to speak in general terms about the abuse occurring during the time period, rather than limiting testimony to specific instances.

At trial, Ti.P. testified about four specific instances of molestation. Ti.P. testified in detail concerning each incident, but also made some statements concerning other, uncharged, molestation. Ta.P. testified concerning child solicitation and also testified that she witnessed one of the instances of molestation described by Ti.P.

Ti.P. testified that Kirk first molested her when she was eleven years old. She testified that Kirk came into her room when her mother was at work and her sister was not home and forced her to undress and engage in intercourse with him. Kirk told Ti.P. not to tell anyone because he had a gun and was not afraid to use it.

Ti.P. testified that on a different occasion, when she was still eleven years old, Kirk made her undress, put on a t-shirt, and come into his room. He then inserted his fingers and a hotdog into her vagina. During her testimony regarding this incident, she mentioned that this behavior occurred more than once, so it was difficult for her to remember the circumstances surrounding the first time that it happened. She mentioned that it happened at least three times, and believed that on this occasion, he also performed oral sex on her and had intercourse with her.

Ti.P. testified that on another occasion, Kirk had intercourse with her when they were lying in the living room. He made her wear shorts and get under a blanket with him. Ta.P. was also in the room at the time, and testified at trial about this incident. Ta.P. testified that when she was in third or fourth grade, she saw Ti.P. lying under a blanket with Kirk lying behind her and that Kirk had his leg over Ti.P. She said that they were "too close, and it didn't look right." Transcript at 64.

Ti.P. also testified that on another occasion Kirk had intercourse with her in a bathroom. She said they had difficulty finding a position, and ended up lying on the floor. She said she took a shower afterwards and that Kirk pretended he was just using the bathroom while she was in the shower.

Ti.P. made several comments during the trial that indicated that these specific four instances were not the only times Kirk molested her. She stated that such instances happened "like every other day." *Id.* at 123. She also testified that Kirk would make her sister and her sister's friend leave the house so that he could be alone with her. He would then make her undress, put on a

3

t-shirt and come into his room. She said that she was used to this and she knew what she was supposed to do. When asked about some specific instances, she could not remember details, because "it was just the same usual thing." *Id.* at 133.

At trial, the jury found Kirk guilty of each count of child molestation, guilty of one count of child solicitation, and not guilty of one count of child solicitation.[1]

*Kirk v. State*, No. 49A04-0605-CR-240, slip op. at 2-4 (Ind. Ct. App. April 16, 2007) (footnote omitted).

At sentencing on April 4, 2006, the trial court cited three aggravating factors: (1) Kirk's position of trust; (2) the significant injury, loss, or damage suffered by Ti.P.; and (3) Kirk's threats to harm Ti.P. if she told anyone. The court cited one mitigating factor, Kirk's sparse criminal history, and stated that "the aggravating and mitigating factors balance each other out." Appellant's PCR App. at 121. Thereafter, the trial court imposed the presumptive thirty-year sentence for each of the three class A felony convictions and the presumptive one-and-a-half-year sentence for the class D felony conviction. All sentences were to run concurrent to Count I (class A felony child molesting) except for Count III (class A child molesting), which was to run consecutive to Count I, for an aggregate sixty-year term. The trial court reasoned "that this is a situation where the harm did not happen to [Ti.P.] just on a couple of occasions, it was numerous and throughout, and that warrants a consecutive sentence on Counts I and III." *Id*. at 123. Neither Kirk's trial counsel nor his appellate counsel challenged the trial court's imposition of consecutive sentences.

---

[1] We note that the only count concerning an act that Kirk allegedly committed against Ta.P. resulted in a not guilty verdict. Thus, in this appeal, we address only Kirk's acts against Ti.P.

4

In his direct appeal, Kirk raised just one issue: whether the trial court erred in allowing testimony regarding other uncharged acts of child molesting under Indiana Evidence Rule 404(b). In April 2007, another panel of this Court found that the testimony was inadmissible but that it was unlikely to have swayed the jury and therefore amounted to harmless error.

Kirk first challenged his consecutive sentences via a PCR petition. In the PCR proceedings, he alleged that he received ineffective assistance of appellate counsel based on counsel's failure to argue on appeal that the trial court committed fundamental error in imposing a consecutive sentence. The post-conviction court held a hearing and took testimony from Kirk's appellate counsel. Thereafter, the post-conviction court denied his PCR petition, and this appeal ensued. Additional facts will be provided as necessary.

## Discussion and Decision

The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Henley v. State*, 881 N.E.2d 639, 643 (Ind. 2008). When appealing a denial of his petition for post-conviction relief, the petitioner stands in the position of one appealing a negative judgment. *Id.* When reviewing the judgment of a post-conviction court, we consider only the evidence and reasonable inferences supporting the judgment. *Hall v. State*, 849 N.E.2d 466, 468 (Ind. 2006). We neither reweigh evidence nor judge witness credibility. *Id.* To prevail on appeal from the denial of his post-conviction petition, the petitioner must demonstrate that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-

conviction court. *Henley*, 881 N.E.2d at 643-44. Where, as here, the post-conviction court enters findings of fact and conclusions of law, we will reverse the findings and judgment "only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Id*. at 644 (citation omitted).

Kirk contends that he was denied his right to effective assistance of counsel as guaranteed by the United States and Indiana Constitutions. A defendant must satisfy two components to prevail on an ineffective assistance claim. *Smith v. State*, 822 N.E.2d 193, 202-03 (Ind. Ct. App. 2005), *trans. denied*. He must demonstrate both deficient performance and prejudice resulting from it. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is representation that fell below an objective standard of reasonableness, wherein counsel has "committ[ed] errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Brown v. State*, 880 N.E.2d 1226, 1230 (Ind. Ct. App. 2008), *trans. denied*. We assess counsel's performance based on facts that are known at the time and not through hindsight. *Shanabarger v. State*, 846 N.E.2d 702, 709 (Ind. Ct. App. 2006), *trans. denied*. "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Ritchie v. State*, 875 N.E.2d 706, 714 (Ind. 2007). "Counsel is afforded considerable discretion in choosing strategy and tactics, and these decisions are entitled to deferential review." *Stevens v. State*, 770 N.E.2d 739, 746-47 (Ind. 2002), *cert. denied* (2003). "Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective." *Id*. at 747. Prejudice occurs when a

6

reasonable probability exists that "but for counsel's errors the result of the proceeding would have been different." *Brown*, 880 N.E.2d at 1230. We can dispose of claims upon failure of either component. *Id*.

In this appeal, Kirk's ineffective assistance claim concerns the performance of his appellate counsel. The standard of review for a claim of ineffective assistance of appellate counsel is identical to the standard for trial counsel. *Lowery v. State*, 640 N.E.2d 1031, 1048 (Ind. 1994), *cert. denied* (1995). The petitioner must establish deficient performance by appellate counsel resulting in prejudice. *Id*. "Ineffective assistance of appellate counsel claims generally fall into three basic categories: (1) denial of access to an appeal, (2) waiver of issues, and (3) failure to present issues well." *Henley*, 881 N.E.2d at 644. "[T]he decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel." *Reed v. State*, 856 N.E.2d 1189, 1196 (Ind. 2006). For countless years, experienced advocates have "emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues." *Bieghler v. State*, 690 N.E.2d 188, 194 (Ind. 1997) (citation and quotation marks omitted), *cert. denied* (1998). Thus, when reviewing these types of claims, we should be particularly deferential to appellate counsel's strategic decision to exclude certain issues in favor of other issues believed to be more likely to result in a reversal. *Id*. As a result, "[i]neffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal." *Reed*, 856 N.E.2d at 1196.

Here, Kirk asserts that his appellate counsel was ineffective for failing to raise as fundamental error on direct appeal the trial court's decision to impose consecutive sentences. We first observe that the claim need not have been presented as one of fundamental error. In *Kincaid v. State*, 837 N.E.2d 1008 (Ind. 2005), our supreme court explained that

> [w]hile it is, of course, true that a claim is not normally available for review on appeal unless first made at trial, this Court and the Court of Appeals review many claims of sentencing error (improper consideration of an aggravating circumstance, failure to consider a proper mitigating circumstance, inaccurate weighing of aggravating and mitigating circumstances, etc.) without insisting that the claim first be presented to the trial judge. On the other hand, an appellant in a criminal case must raise a particular sentencing claim in his or her initial brief on direct appeal in order to receive review on the merits.

*Id*. at 1010. *See also Reed v. State*, 856 N.E.2d 1189, 1194 (Ind. 2006) (stating that counsel need not object at sentencing to preserve sentencing error for review on direct appeal).

> We further observe that

> [t]o show that counsel was ineffective for failing to raise an issue on appeal thus resulting in waiver for collateral review, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 260-61 (Ind. 2000). To evaluate the performance prong when counsel waived issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are "clearly stronger" than the raised issues. *Timberlake v. State*, 753 N.E.2d 591, 605-06 (Ind. 2001).

 *Henley*, 881 N.E.2d at 645 (quotation marks omitted).

On direct appeal, Kirk's counsel raised one issue: that the trial court erred in allowing evidence of uncharged sex acts. Kirk claims that she also should have raised the consecutive sentencing issue. At the time of that appeal, the general rule concerning consecutive sentencing was, if the aggravating and mitigating factors are found to be in balance, then

8

"there is no basis on which to impose consecutive terms." *Marcum v. State*, 725 N.E.2d 852, 864 (Ind. 2000). However, while Kirk's direct appeal was pending, another panel of this Court held that where the trial court conducted its initial balancing and found the aggravators and mitigators to be equal in weight, it nonetheless could impose consecutive sentences based on an additional aggravator not previously cited in the initial weighing process. *Gleaves v. State*, 859 N.E.2d 766, 771 (Ind. Ct. App. 2007).

Here, in sentencing Kirk, the trial court identified three statutory aggravators: (1) his position of trust—a stepfather living with and caring for his stepdaughter while her mother was at work; (2) the significant injury, loss, or damage suffered by Ti.P.; and (3) his threats to harm Ti.P. if she told anyone. The trial court found one mitigator, Kirk's sparse criminal record, and then stated that he found the aggravators and mitigators to be in balance. However, in imposing consecutive sentences, the trial court emphasized the frequency and number of times Kirk molested Ti.P. (approximately every other day) over a long period of time (many months as opposed to days).

Kirk alleges that it is obvious from the record that the trial court used the same aggravator to impose consecutive sentencing that it had already used in the balancing process. We disagree. The confusion between the two aggravators is attributable more to the trial court's lengthy explanation rather than to any substantive equivalency between them:

> [T]he Court finds under Indiana Code 35-38-1-7.1 that …. the aggravating factors in this case are as follows: that, first of all, [Kirk] was certainly in a position of trust when he committed this crime. The evidence throughout the jury trial was very clear that he was the stepfather of [Ti.P.], and that they resided together, and that he was there many times to be caring for the children when the mother was at work. So, he was most certainly in a position of trust

9

with this little girl. Although she was 15 when she testified during the trial, the offenses occurred when she was 11 years of age. *The second aggravating factor, which is one listed in the statute that the Court can consider is that the home* [sic] *injury loss or damage suffered by the victim of the offense was significant, and was greater than the elements necessary to prove the commission of the offense. The Court finds this as an aggravating factor because I was able to watch the young lady testify, and she told us that these— he would have sex with her every other day, and it happened for a time period for about nine months. And he was only charged with three A felonies, and so that's certainly greater than the elements, and has caused significant harm to her. That was apparent by her demeanor when she testified in court during the jury trial. In addition, in the letter that she wrote to me, she tells me that he has caulded—caused her nightmares, stress, pain, and tears. She also indicates in the beginning of the letter, [Kirk] has caused a lot of pain and stress in my life. And if any one of his children was raped, he would want that person to spend of* [sic] *life in prison. So, she goes on and she tells about her pain, and it certainly is a great deal of pain for a child of that age to endure having a stepfather have sex with them every other day.* The Court finds that the third aggravating factor is—which is also in—listed in the statute is that when a person threatens to harm a victim of an offense, or a witness if they tell anyone about the offense that that is an aggravating factor. And we heard lengthy testimony throughout the trial about the fact that he threatened her— that he would kill her if she told anyone. And so that certainly is a—an aggravating offense. The only mitigator the Court can find is that—for a person of his age, which is 50 years of age—he does—he really has lead [sic] a fairly law-abiding life, and only has one conviction, and that's for Possession of Cocaine back in 1992. It's unable for the Court to determine whether that was a mil—misdemeanor, or a felony. It just indicates that he spent some time incarcerated in the State of Mississippi. And—and the Court has found these aggravating factors on Counts I, II, and III. The Court having found those aggravators and mitigator, I should include on those three counts, on Counts I, II, and III, the Court finds that the aggravating factors and mitigating factors balance each other out. And on Counts I, II, and III, Child Molest, as a Class A felony, the Court is going to impose a sentence of 30 years. The Court will not suspend any of that time …. On Count IV, which is Child Solicitation, which is a Class D felony …. [t]he Court will impose a sentence of one and a half years …. The Court is going to order that Counts I and III be served consecutively as the Court finds that *this is a situation where the harm did not happen to [Ti.P.] just on a couple of occasions, it was numerous and throughout, and that warrants a consecutive sentence* on Counts I and III. The Court will order then that Counts II and IV run concurrent with Counts I and III for a total sentence of 60 years executed.

Appellant's App. at 214-19 (emphases added).

When the trial court conducted its initial balancing, it relied on statutory factors, one of which was that the "harm, injury, loss, or damage suffered by the victim of an offense was … significant; and … greater than the elements necessary to prove the commission of the offense." Ind. Code § 35-38-1-7.1(a)(1) (2003). However, when evaluating whether Kirk's sentences should be concurrent or consecutive, the trial court emphasized the continuity of Kirk's conduct, i.e., the number of times that he molested Ti.P. While at first glance, these two factors seem to overlap, they are distinct in that the former emphasizes the impact on the victim and the latter emphasizes the acts of the perpetrator.

Finally, we note that at the PCR hearing, appellate counsel testified that she examined the trial court record, conferred with trial counsel, and made a strategic decision to pursue what she believed was a meritorious issue on direct appeal. PCR Tr. at 23-27. In that appeal, this Court agreed, finding error in the admission of the evidence of uncharged acts, albeit harmless.

Based on the foregoing, we conclude that the trial court's decision to impose consecutive sentences was based on an independent aggravating factor. Thus, there was no sentencing error that was "obvious from the face of the record" or "clearly stronger" than the issue raised on direct appeal. *Henley*, 881 N.E.2d at 645. As such, Kirk's appellate counsel did not provide ineffective assistance in electing not to challenge his sentence on direct appeal. Accordingly, we affirm the post-conviction court's denial of his PCR petition.

Affirmed.

11

VAIDIK, J., and BRADFORD, J., concur.