**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARK S. LENYO**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CARLTON P. WILSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1108-CR-384 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable J. Jerome Frese, Judge
Cause No. 71D03-1102-FB-17

**June 12, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Carlton P. Wilson ("Wilson") was convicted of Arson, as a Class A felony.[1] He now appeals. We affirm.

**Issues**

Wilson raises two issues for our review:

I. Whether there was sufficient evidence to support the elevation of the offense to a Class A felony; and

II. Whether his sentence is inappropriate under Appellate Rule 7(B).

**Facts and Procedural History**

During the evening of January 28, 2011, and the early morning hours of January 29, 2011, Wilson was at a home in South Bend that his eighty-three year-old mother, Bertha Smith ("Smith"), shared with Gail Mink ("Mink"); Mink's boyfriend, Darrie DeBury ("DeBury"); and Leo Williams ("Williams").[2] Wilson would also stay at the home from time to time.

At some point that night, Wilson and Smith began to argue after Wilson demanded money from Smith. When Smith protested that she did not have the amount Wilson demanded, he became angry and said he was "going to show [Smith] something." Trial Tr. at 16. Wilson then retrieved a red gasoline can and poured gasoline near the entrance of Smith's room and in the hallway just outside the bedroom's door.

---

[1] Ind. Code § 35-43-1-1(a).

[2] Williams was not present during the events described here.

After waking Mink and DeBury to tell them to leave the house because he was planning to set it on fire, Wilson ignited the gasoline in Smith's room and fled. Mink and DeBury escaped to a neighbor's house, and 911 was called. Smith, however, was unable to move around without a walker or wheelchair and remained in the home, trapped in her bedroom by the fire.

Officers John Gast ("Officer Gast") and Davin Hackett ("Officer Hackett") and Corporal James Aters ("Corporal Aters") of the South Bend Police Department were the first individuals on the scene. While Officer Gast attempted to enter the house through a side door, Officer Hackett attempted to kick open the front door of the residence. Neither officer was able to enter the home far enough to reach Smith, but each heard her calling for help from the bedroom.

Officers Gast and Hackett rushed to Smith's bedroom window, which was closed when they arrived, but through which Smith was then attempting to escape. Smith had used her telephone to break away some of the glass from the window, and eventually used her head to force out a flexible storm windowpane so that, by the time Officer Hackett arrived at the window, Smith's head and upper torso were protruding outside. Officers Gast and Hackett helped Smith onto the ground, moved her away from the house, and eventually took her to Corporal Aters's patrol car to await an ambulance. Upon assessing Smith's physical condition, Officers Gast and Hackett each noticed blood in several places on her body, including her head and legs. Smith had also suffered a cut to her finger.

On February 1, 2011, Wilson was charged with Arson, as a Class B felony, and a

warrant was issued for his arrest the same day. Wilson was arrested on February 3, 2011. On February 17, 2011, the charging information was amended to add a count of Arson, as a Class A felony.

On April 8, 2011, Wilson waived a jury trial. A bench trial was conducted on April 18 and 19, 2011, at the conclusion of which the trial court found him guilty of both counts and entered judgment of conviction against Wilson for Arson, as a Class A felony.

A sentencing hearing was conducted on July 21, 2011. At the hearing's conclusion, the trial court sentenced Wilson to fifty years imprisonment.

This appeal ensued.

## Discussion and Decision

### Sufficiency of the Evidence

Wilson challenges his conviction for Arson, arguing that there was insufficient evidence of bodily injury to support the elevation of his offense to a Class A felony. We disagree.

Wilson was convicted after a bench trial, and our standard of review in such cases is well settled:

> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. Henley v. State, 881 N.E.2d 639, 652 (Ind. 2008). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." Id. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id.

Bailey v. State, 907 N.E.2d 1003, 1005 (Ind. 2009).

4

The State charged Wilson with Arson, as a Class A felony. To convict him of the offense, the State was required to prove beyond a reasonable doubt that Wilson, by means of fire, knowingly damaged Smith's dwelling without her consent, resulting in bodily injury to Smith, namely lacerations to her hand. I.C. § 35-43-1-1(a); App. at A-15.

Wilson argues that the State failed to produce sufficient evidence at trial to prove that Smith incurred bodily injury as a result of his offense. Thus, he argues, his conviction for Arson, as a Class A felony, should be vacated, and he should instead have been convicted of Arson, as a Class B felony.

"'Bodily injury' means any impairment of physical condition, including physical pain." I.C. § 35-41-1-4. "'Medical treatment, bloodshed or visible wounds are not necessary to a finding of bodily injury.'" Faulisi v. State, 602 N.E.2d 1032, 1037 (Ind. Ct. App. 1992) (quoting Gebhart v. State, 525 N.E.2d 603, 604 (Ind. 1988)), trans. denied. Whether an individual has suffered bodily injury is a question of fact for the jury or fact-finder. Id.

Here, Smith testified that she incurred a laceration to her finger and had cuts on her body, was taken by ambulance to a hospital, and required continued treatment in the form of ongoing physical therapy. Officer Gast testified that Smith used her head to break window glass and escape the fire that had engulfed her bedroom, and that there were several spots of blood on her. Corporal Aters testified that Smith had abrasions on her head and injuries to one of her hands. Finally, Officer Hackett testified that he saw Smith bleeding from her head and legs.

Simply put, Wilson invites us to reweigh evidence; we decline the invitation. The

5

State produced sufficient evidence for a fact-finder to conclude beyond a reasonable doubt that he committed Arson, as charged, and we therefore affirm his conviction.

Sentencing

Wilson also argues that his sentence is inappropriate. Under Appellate Rule 7(B), this "Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." It is the defendant's burden to persuade this court that his sentence "has met th[e] inappropriateness standard of review." Anglemyer v. State, 868 N.E.2d 482, 494 (Ind. 2007) (quoting Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006)), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007).

In Reid v. State, the Indiana Supreme Court reiterated the standard by which our state appellate courts independently review criminal sentences:

> Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence through Indiana Appellate Rule 7(B), which provides that a court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The burden is on the defendant to persuade us that his sentence is inappropriate.

876 N.E.2d 1114, 1116 (Ind. 2007) (internal quotation and citations omitted).

The Court more recently stated that "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). Indiana's flexible sentencing scheme allows trial

6

courts to tailor a sentence appropriate to the circumstances presented. <u>See</u> <u>id.</u> at 1224. One purpose of appellate review is to attempt to "leaven the outliers." <u>Id.</u> at 1225. "Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." <u>Id.</u> at 1224.

Here, Wilson was convicted of Arson, as a Class A felony. The sentencing range for this offense runs from twenty to fifty years, with a statutory advisory sentence of thirty years. I.C. § 35-50-2-4. The trial court sentenced Wilson to the maximum term of fifty years imprisonment, which he now argues is inappropriate.

We look first to the nature of Wilson's offense. Here, Wilson set ablaze a house occupied by Smith, his mother, and three other individuals after engaging in a dispute with Smith over money. Smith was eighty-three years old at the time and relied upon a walker or wheelchair to move about the house. Wilson informed the other occupants of the house that he planned to set the fire so that they could leave the house, but lit the fire near the door of Smith's room with the stated intent of showing her the consequences of failing to do what he demanded. The fire's location cut off a ready escape path for Smith, who was forced to break a storm window and attempt to jump out a window to flee the fire. All this sets Wilson's offense apart from other acts of arson that might otherwise lead to an advisory sentence.

Nor does Wilson's character speak well of him. His first contacts with the criminal justice system occurred as a juvenile in 1967, and he was adjudicated a delinquent on at least

7

five occasions. As an adult, Wilson has been convicted of numerous felonies and misdemeanors, including armed robbery, burglary, assault, sexual battery, malicious destruction of a building, battery, violation of a protective order, driving while intoxicated, and intimidation. These offenses were committed in Indiana, Michigan, and Illinois. Wilson has also violated parole, probation, and bond on numerous occasions, and has had numerous and continuous other contacts with law enforcement from his initial contacts as a juvenile in 1967 through the present offense. He has a substantial delinquency on child support obligations, a spotty employment history, a history of intermittent substance abuse, and a long history of alcohol abuse.

In sum, Wilson has not persuaded us that the statutory maximum sentence of fifty years is inappropriate in light of the nature of his offense and his character.

### Conclusion

Wilson has not persuaded us that there was insufficient evidence from which the trial court could conclude that his act of arson caused bodily injury. Nor has he persuaded us that his fifty-year sentence is inappropriate.

Affirmed.

ROBB, C.J., and MATHIAS, J., concur.

8