**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 24 2013, 9:13 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**DENNIS MEYER**
Carlisle, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DENNIS MEYER, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1206-PC-547 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Robert R. Altice, Judge
Cause No. 49G02-0006-PC-97299

**May 24, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

Appellant-Petitioner, Dennis Meyer (Meyer), appeals the denial of his amended petition for post-conviction relief.

We affirm.

ISSUES

Meyer raises four issues, which we consolidate and restate as the following two issues:

(1) Whether Meyer's trial counsel provided ineffective assistance of counsel; and

(2) Whether Meyer's appellate counsel provided ineffective assistance of counsel.

FACTS AND PROCEDURAL HISTORY

We reviewed the factual background in the direct appeal of this case as follows:

Meyer and M.R. met when they participated in a drug and alcohol rehabilitation program with a group of people, including Sidney Newman (Newman). Newman lived in half of a double he owned. He rented out the four bedrooms in the other half to recovering addicts from the group. Newman required the renters to work and pay rent and to remain "clean and sober." []. Meyer and M.R. were two of the renters in the half of the double located at 102 Neal Avenue, in Indianapolis, Indiana. Each renter had his or her own bedroom, but shared a kitchen, a living room, and a bathroom.

Prior to the incident at issue, M.R. had been under the impression that Meyer was interested in her romantically. M.R. testified that she repeatedly told Meyer that she struggled with her addiction and that becoming romantically involved with him was not what she needed. Nevertheless, on the evening of June 8, 2000, Meyer expressed to M.R. that he was unhappy with the living arrangement and that he planned on moving out of the house. He asked M.R. if she wanted to move into an apartment with him. M.R. told Meyer that she liked where she lived and that she was not interested in moving into an apartment with him.

At the conclusion of the conversation, M.R. went into her first-floor bedroom and sat down on the sofa. Meyer followed her and sat down on the floor. The conversation resumed, and, as Meyer tried to persuade M.R. to move into an apartment with him, the conversation became "argumentative." []. Eventually, Meyer left the house and M.R. closed her bedroom door and locked it from the inside. M.R. was upset about the conversation with Meyer, so she telephoned another member of the recovery program and talked to him about her conversation with Meyer for approximately an hour before she went to bed.

Later that night, in the early morning hours of June 9, 2000, M.R. awakened to find Meyer coming into her bedroom through a hole he cut in the window screen. Meyer grabbed M.R. and placed a knife to her neck. M.R. said, "Dennis, what are you doing to me? Why are you doing this?" []. Meyer proceeded to remove M.R.'s pajamas, as she struggled to escape him, and forced himself on top of her. When he was unable to attain an erection, Meyer penetrated M.R. with his fingers, causing a vaginal tear in the process. At this point, M.R. freed herself and jumped out of her window onto the concrete porch and ran to the other half of the double where Newman lived. Newman let M.R. inside and told her to call [911] while he went to find some clothes for her to wear.

*Meyer v. State*, No. 49A05-0306-CR-265, slip op. at 1-4 (Ind. Ct. App. Feb. 24, 2004) (internal citations omitted). After police met with M.R., Meyer was apprehended. Meyer requested medical attention for an injury to his hand. He was transported to Wishard Hospital and signed a consent form permitting a search of his person and authorization for police to seize any article deemed pertinent to its investigation. A nurse collected blood, head and pubic hair samples as well as penile, fingernail, and oral swabs.

On June 12, 2000, the State filed an [I]nformation against Meyer, charging him with Count I, burglary, as a Class A felony [Ind. Code § 35-43-2-1]; Count II, attempted rape, as a Class A felony [I.C. § 35-42-4-1, 35-41-5-1]; Count III, attempted criminal deviate conduct, as a Class A felony [I.C. § 35-42-4-2, 35-41-5-1]; Count IV, criminal confinement as a Class B felony [I.C. § 35-42-3-3]; and Count V, battery, as a Class C felony [I.C. § 35-42-2-1]. Meyer remained in jail until his first jury trial setting on

3

February 12, 2001, at which M.R. failed to appear to testify. As a result, Meyer was released from jail on his own recognizance.

*Id*. at 4. On May 7-8, 2001, a second jury trial was held; however, Meyer failed to appear. Meyer was found guilty *in absentia* on all charges. On May 2, 2003, following his apprehension in Kentucky, the trial court held a sentencing hearing and sentenced Meyer to two consecutive fifty-year sentences for burglary and attempted rape. Meyer also received concurrent sentences of twenty years for attempted criminal deviate conduct as a lesser included offense and three years for criminal confinement as a Class D felony. Meyer received an aggregate sentence of one hundred years.

Meyer appealed, challenging the sufficiency of the evidence for his convictions on the burglary and attempted rape. On February 26, 2004, we affirmed the trial court. *See Meyer v. State*, No. 49A05-0306-CR-265 (Ind. Ct. App. Feb. 26, 2004). On April 28, 2004, Meyer filed a petition for post-conviction relief, which was withdrawn without prejudice on January 27, 2006. On June 18, 2007, Meyer filed his second petition for post-conviction relief, which he amended on May 1, 2008, and thereafter filed four addendums on July 9, 2008, October 15, 2009, May 17, 2010, and February 8, 2011. On June 6, 2008, the State filed its answer. On January 19, 2009 and October 9, 2011, a bifurcated hearing was held. On May 31, 2012, the post-conviction court issued its Order denying post-conviction relief.

Meyer now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

4

We first state the applicable standard of review for post-conviction relief. The preponderance of evidence standard applies when determining whether the petitioner has established his claims to post-conviction relief. *See* Ind. Post-Conviction Rule 1, § 5; *see Henley v. State*, 881 N.E.2d 639, 643 (Ind. 2008). Appeal from a denial of post-conviction relief is equivalent to appeal from a negative judgment. *See Henley*, 881 N.E.2d at 643. To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id*. at 643-44. Where the post-conviction court has entered findings of fact and conclusions of law, findings of fact are accepted unless clearly erroneous, but conclusions of law are accorded no deference. *See id*. at 644.

## II. *Ineffective Assistance of Trial Counsel*

Meyer argues that his trial counsel was ineffective for failing to suppress biological evidence obtained prior to his initial hearing, failing to object to jury instructions, and failing to object to his sentence. Ineffective assistance of counsel claims are subject to the two prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must establish counsel's deficient performance and prejudice resulting therefrom. *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006). Counsel's performance (1) must fall below an objective standard of reasonableness in light of professional norms, and (2) but for counsel's failure to meet such norms, the results of the proceedings would have been different. *Johnson v. State*, 832 N.E.2d 985, 996 (Ind.

Ct. App. 2005), *trans. denied*. Prejudice is measured by inquiring "whether it is 'reasonably likely' the result would have been different" but for counsel's performance. *Harrington v. Richter*, 131 S.Ct. 770, 792 (2011). "The likelihood of a different result must be substantial, not just conceivable." *Id*. An ineffective assistance of counsel claim fails if either prong of the *Strickland* test is not satisfied. *Henley*, 881 N.E.2d at 645.

### A. *Motion to Suppress*

Meyer first argues that his trial counsel's performance was deficient because she did not seek suppression of biological evidence obtained from him following his arrest. Specifically, Meyer argues that his initial hearing was unreasonably delayed because he was arrested on Friday, June 9, 2000 and his initial hearing occurred on Monday, June 12, 2000. As a result, Meyer contends that a motion to suppress biological evidence obtained from him between his arrest and initial hearing would have been successful.

"To prevail on an ineffective assistance of counsel claim based upon counsel's failure to file motions on a defendant's behalf, the defendant must demonstrate that such motions would have been successful." *Moore v. State*, 872 N.E.2d 617, 621 (Ind. Ct. App. 2007). Meyer was arrested without a warrant sometime after M.R. contacted the police on Friday, June 9, 2000. However, a probable cause hearing did not occur until the following day, Saturday, June 10, 2000. His initial hearing occurred the following Monday, June 12, 2000.

At the time of Meyer's arrest, the statute governing warrantless arrests provided that "a person arrested without a warrant shall be taken promptly before a judicial officer

6

[…] for an initial hearing in court." I.C. § 35-33-7-1(a) (West St. Ann. 2000).[1] Further, an *ex parte* probable cause determination for warrantless arrests may be made at or before the initial hearing. *See* I.C. § 35-33-7-2(a) (West St. Ann. 2000).[2] As a general matter, a person arrested without a warrant should be brought before a magistrate within forty-eight hours of the arrest for a determination of probable cause. *See Griffith v. State*, 788 N.E.2d 835, 840-41 (Ind. 2003). The normal remedy for the violation of such a delay is the suppression of the evidence obtained during the unreasonable delay. *Stafford v. State*, 890 N.E.2d 744, 749 (Ind. Ct. App. 2008).

In urging us to conclude that an unreasonable delay occurred, Meyer cites language from a repealed statute, I.C. § 36-8-3-11, providing generally that initial

---

[1] At the time of Meyer's arrest, I.C. § 35-33-7-1 (West St. Ann. 2000) provided, in relevant part:

(a) A person arrested without a warrant for a crime shall be taken promptly before a judicial officer:

 (1) in the county in which the arrest is made; or

 (2) of any county believed to have venue over the offense committed; for an initial hearing in court.

(b) Except as provided in subsection (c), if the person arrested makes bail before the person's initial hearing before a judicial officer, the initial hearing shall occur at any time within twenty (20) calendar days after the person's arrest.

[2] At the time of Meyer's arrest, I.C. § 35-33-7-2 (West St. Ann. 2000) provided:

(a) At or before the initial hearing of a person arrested without a warrant for a crime, the facts upon which the arrest was made shall be submitted to the judicial officer, ex parte, in a probable cause affidavit. In lieu of the affidavit or in addition to it, the facts may be submitted orally under oath to the judicial officer. If facts upon which the arrest was made are submitted orally, the proceeding shall be recorded by a court reporter, and, upon request of any party in the case or upon order of the court, the record of the proceeding shall be transcribed.

 (b) If the judicial officer determines that there is probable cause to believe that any crime was committed and that the arrested person committed it, the judicial officer shall order that the arrested person be held to answer in the proper court. If the facts submitted do not establish probable cause or if the prosecuting attorney informs the judicial officer on the record that no charge will be filed against the arrested person, the judicial officer shall order that the arrested person be released immediately.

7

hearings be held within 24 hours of an arrest. *See* I.C. § 36-8-3-11 (West St. Ann. 1994). However, I.C. § 36-8-3-11 was repealed in 1995, almost five years before Meyer's arrest, and is therefore inapplicable. *See* P.L. 148-1995, Sec. 8, effective July 1, 1995. The record confirms that Meyer received a probable cause hearing on Saturday, June 10, 2009, one day after his arrest. Meyer's presentation to the magistrate was therefore compliant with I.C. §§ 35-33-7-1, -2 and thus no unreasonable delay occurred. Furthermore, Meyer has not alleged that his consent to search his person was the product of coercion. *See Peterson v. State*, 674 N.E.2d 528, 539 (Ind. 1996), *reh'g denied*, *cert. denied*, 522 U.S. 1078 (1998). Had his counsel requested suppression of the biological evidence, Meyer has not demonstrated any likelihood the trial court would have granted it. Therefore, Meyer has not demonstrated his trial counsel was ineffective.

### B. *Jury Instruction*

Meyer next argues that his trial counsel's performance was deficient because she did not object to Final Instruction No. 16, providing the elements of Class A felony burglary. Specifically, he contends that because the instruction omitted the word "dwelling," it deviated from the charging Information which alleged that Meyer entered "the building or structure, and dwelling of [M.R.]." (Direct Appeal App. p. 32).

Class A felony burglary is defined as follows:

A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony. However, the offense is:
[…]

(2) a Class A felony if it results in:

8

     (A) bodily injury; or
     (B) serious bodily injury;
   to any person other than a defendant.

I.C. § 35-43-2-1(2) (West St. Ann. 2000). "The elements of [C]lass A burglary, then, are: the (1) breaking and (2) entering of (3) the building or structure (4) of another (5) by one who intends to commit a felony therein (6) which results in bodily injury or serious bodily injury to another person." *Goodpaster v. State*, 402 N.E.2d 1239, 1242 (Ind. 1980). The record shows that Final Instruction No. 16 set out the elements of Class A felony burglary consistent with the statute and included all of the essential elements. Therefore, Meyer has not demonstrated his trial counsel was ineffective.

## C. *Sentencing*

Meyer also contends that his trial counsel was ineffective because she did not object to the trial court's sentencing based upon the Supreme Court of the United States' decision in *Blakely v. Washington*, 594 U.S. 296 (2004), *reh'g denied*.[3] However, Meyer's trial concluded on May 7, 2000 and his sentencing hearing was held on May 2, 2003. Further, Meyer filed his direct appeal on May 29, 2003, and this court issued its decision affirming his convictions on February 24, 2004.

On June 24, 2004, the Supreme Court decided *Blakely* and on March 9, 2005, our supreme court applied *Blakely* to Indiana's sentencing scheme in *Smylie v. State*, 823

---

[3] In *Blakely*, the Supreme Court held that the Sixth Amendment to the United States Constitution requires a jury to find beyond a reasonable doubt any fact "that increases the penalty for a crime beyond" "the maximum sentence a judge may impose solely on the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303-04 (emphasis omitted).

N.E.2d 679 (Ind. 2005), *cert. denied*, 546 U.S. 976 (2005). In *Smylie*, our supreme court recognized that "[b]ecause *Blakely* represents a new rule that was sufficiently novel that it would not have been generally predicted, much less envisioned to invalidate part of Indiana's sentencing structure, requiring a defendant or counsel to have prognosticated the outcome of *Blakely* or of [the *Smylie*] decision would be unjust." *Smylie*, 823 N.E.2d at 689. Similarly, in *Donnegan v. State*, 889 N.E.2d 886, 892-93 (Ind. Ct. App. 2008), *trans. denied*, we determined that appellate counsel was not ineffective for not raising a *Blakely* challenge to a defendant's sentence affirmed on direct appeal in June 2004. Consequently, we conclude that Meyer has not shown that the objection to his sentence would have been sustained if his trial counsel had objected to his sentencing based upon *Blakely*. The post-conviction court did not err in concluding that Meyer's trial counsel was not ineffective.

## II. *Ineffective Assistance of Appellate counsel*

Meyer also argues that his appellate counsel was ineffective for failing to raise on direct appeal the same issues that he contends that his trial counsel should have challenged. However, Meyer's argument consists of a reference to his arguments that trial counsel's assistance was ineffective and a citation to the entirety of his petitions for post-conviction relief and four addenda. It is not sufficient to merely refer to a prior argument in the brief. *Benefiel v. State*, 716 N.E.2d 906, 914 n.2 (Ind. 1999), *reh'g denied*, *cert. denied*, 531 U.S. 830 (2000). To avoid waiver, Meyer must actually argue in his brief how the post-conviction court erred and why his counsel was ineffective. *See*

*id*.  He has not and we therefore conclude that Meyer has waived his claims that his appellate counsel was ineffective.  *See id*.

Waiver notwithstanding, we have already determined Meyer's trial counsel was not ineffective for failing to raise issues.  Where a petitioner did not receive ineffective assistance of trial counsel, he can neither show deficient performance nor resulting prejudice as a result of his appellate counsel's failure to raise the same arguments on appeal.  *See Davis v. State*, 819 N.E.2d 863, 870 (Ind. Ct. App. 2004), *trans. denied*.  We therefore conclude that Meyer's appellate counsel was not ineffective.

## CONCLUSION

Based on the foregoing, we conclude that Meyer did not receive ineffective assistance of trial or appellate counsel.

Affirmed.

BRADFORD, J. and BROWN, J. concur