# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 21 2016, 9:42 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeffrey W. Elftman
Bolinger Law Firm
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Karl M. Scharnberg
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jacoby Sanders,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

July 21, 2016

Court of Appeals Case No.
52A02-1511-CR-2061

Appeal from the Miami Superior Court

The Honorable  J. David Grund, Judge

Trial Court Cause No.
52D01-1312-FB-93

**Bailey, Judge.**

# Case Summary

Jacoby Sanders ("Sanders") appeals his convictions for Failing to Stop after an Accident Resulting in Serious Bodily Injury, a Class B felony,[1] Operating a Vehicle While Intoxicated Endangering a Person,[2] a Class A misdemeanor, Causing Death when Operating a Motor Vehicle while Intoxicated, a Class C felony,[3] and Failure to Stop after an Accident Resulting in Death, a Class C felony.[4] We remand with instructions to vacate the Class A misdemeanor conviction and the Class C felony convictions, on double jeopardy grounds. We affirm the Class B felony conviction for Failing to Stop.

# Issues

Sanders presents four issues for review:

    I.      Whether the State presented sufficient evidence that Sanders was intoxicated;

    II.    Whether the State presented sufficient evidence to support Sanders' conviction for failing to stop after an accident;

---

[1] Ind. Code §§ 9-26-1-1(a)(2), 9-26-1-8(a)(3).

[2] I.C. §§ 9-30-5-2(a), 9-30-5-2(b).

[3] I.C. § 9-30-5-5(a)(3).

[4] I.C. §§ 9-26-1-1(1), 9-26-1-8(a)(3). He does not specifically challenge his conviction for Illegal Consumption of an Alcoholic Beverage by a Minor.

III.   Whether the trial court abused its sentencing discretion by recognizing an improper aggravator or ignoring mitigating evidence when imposing the aggregate sentence; and

IV.   Whether the fifteen-year aggregate sentence, with three years suspended to probation, is inappropriate.

We sua sponte raise the issue of whether Sanders' multiple convictions for failing to stop after an accident and operating a vehicle while intoxicated violate double jeopardy principles.

# Facts and Procedural History

During the late evening hours of May 10, 2013, and the early morning hours of the next day, twenty-two year old Adam Betzner ("Betzner") was entertaining a group of friends and acquaintances at his parents' home while they were out-of-town. Two of the guests were Sanders, and his best friend, D.J. Rose ("Rose"). Other guests included Mark Watkins ("Watkins"), Miranda Worl ("Worl"), Terrin Cooper ("Cooper"), and Dakota Rose ("Dakota").

Sanders and Rose went to a grocery store to get beer and Jack Daniels whiskey. Because both of them were underage, they convinced another customer to get the alcohol for them, which they took to the Betzner residence. Watkins brought a twelve-pack of beer. Also, some mixed drinks and synthetic marijuana known as Spice were available.

[5] Shortly after 2:30 a.m. on May 11, Cooper and Watkins left on a forty-five-minute round trip to the grocery store. By this time, Dakota was passed out and Sanders appeared to Betzner to be intoxicated. When Betzner overheard Sanders talking to Rose about going for a drive, Betzner "sternly" warned them "they had no business on the road" because they were drunk. (Tr. at 112.) As Cooper and Watkins returned from the grocery store, they saw that Worl, Sanders, and Rose were preparing to leave. Cooper and Watkins "were trying to talk them out of leaving" because Rose and Sanders appeared intoxicated. (Tr. at 144.)

[6] Undeterred, Sanders, Rose, and Worl left the Betzner residence. Sanders was driving, Worl was in the front passenger seat, and Rose was in the back seat. Minutes later, Sanders disregarded a stop sign and then "just went straight" instead of "turning with" a sharp curve in the road. (Tr. at 84.) The vehicle went down an embankment and struck a tree.

[7] The airbags deployed, and Worl was temporarily disoriented. After a while, she and Sanders opened their doors and exited the vehicle. Worl realized that Rose had not done likewise. She opened a door to find Rose slumped toward the window. She pulled until he fell from the vehicle. Sanders came around the vehicle and tried to assist, but realized that his own leg was broken. Sanders told Worl to "go back and get help." (Tr. at 86.)

[8] Worl walked back to the Betzner residence and told Watkins, Cooper, and Betzner that there had been an accident. Worl appeared calm and uninjured, so

the initial response from the partygoers was that Worl was playing a part in a practical joke. After Worl persisted, Cooper and Betzner left to locate the wreck. As they drove near the wrecked vehicle, Cooper and Betzner could see that it had caught fire and burned.

[9] Cooper and Betzner called out for Sanders, without response. Betzner went down the embankment and found Rose's body with the feet under the vehicle. It was later learned that Rose had died upon impact. However, his body was badly burned.

[10] Cooper called 9-1-1 to report the accident. She pretended to have come upon the accident by happenstance and denied seeing anyone near the wreckage. By this time, Sanders had crawled toward Cooper's vehicle. Cooper opened the back door, and Sanders crawled into the back seat. Betzner came back up the hill and reported that Rose was dead. Cooper then hung up on the 9-1-1 operator.

[11] Sanders began yelling "we need to go," but Betzner told him "you can't run from this." (Tr. at 163.) After Betzner screamed at Sanders: "he's dead, you killed him he's dead. DJ's dead," Sanders responded: "I don't give a f--- about DJ we just need to get out of here." (Tr. at 118.) Cooper drove off, with both men screaming at each other. Cooper considered taking Sanders to a hospital, but honored his request to be taken to his father's house, which was nearby.

[12] After he was left with his father, Sanders was taken to Dukes Memorial Hospital. At 6:37 a.m., hospital staff drew a sample of Sanders' blood, disclosing an alcohol serum level of 63 mg per deciliter.[5]

[13] On December 5, 2013, the State charged Sanders with six counts related to the fatal accident. A seventh charge was added on August 17, 2015. Sanders was tried before a jury, acquitted of two charges,[6] and convicted of five. This appeal ensued.

## Discussion and Decision

## Sufficiency of the Evidence – Intoxication

[14] Sanders challenges each of the convictions requiring proof of intoxication. In Count 1, the State alleged that Sanders violated Indiana Code Section 9-26-1-1(a)(2) when he failed to stop and render reasonable assistance after he committed operating while intoxicated, resulting in serious bodily injury to Rose. At that time, Indiana Code Section 9-26-1-8(a)(3) provided that the offense of failure to stop was a Class B felony if the person knowingly or intentionally failed to stop after committing operating while intoxicated causing serious bodily injury. In Count 3, the State alleged that Sanders operated a

_____

[5] In the opinion of toxicologist George Behonick, assuming all of the alcohol had been absorbed at the time of the accident, Sanders' BAC would have been .093 if the accident occurred at 4:00 a.m., .102 if the accident occurred at 3:20 a.m., and .107 if the accident occurred at 3:00 a.m.

[6] Operating a vehicle with an ACE of .08 or more, a Class C misdemeanor, I.C. § 9-30-5-1, and Causing Death when Operating a Motor Vehicle with an ACE of .08 or more, a Class C felony, I.C. § 9-30-5-5.

vehicle while intoxicated, in a manner that endangered a person, in violation of Indiana Code Section 9-30-5-2. In Count 6, the State alleged that Sanders caused the death of Rose, when operating a motor vehicle while intoxicated, in violation of Indiana Code Section 9-30-5-5(a)(3).

[15] Pursuant to Indiana Code Section 9-13-2-86(1), "intoxicated means under the influence of alcohol so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." Sanders concedes that he was intoxicated at some point during the party, but argues that the State failed to show that he was impaired when he was driving.

[16] When reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge witness credibility. *Henley v. State*, 881 N.E.2d 639, 652 (Ind. 2008). We consider only the evidence supporting the judgment and the reasonable inferences that can be drawn from that evidence. *Id.* A conviction will be affirmed if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

[17] Betzner testified that Sanders had been the heaviest drinker at the party. According to Betzner, he confronted Sanders about leaving because Sanders appeared intoxicated. Betzner described Sanders as "stumbling, not walking straight, acting very belligerent, [and] slurring his words" shortly before Betzner noticed that Sanders, Worl, and Rose were missing. (Tr. at 115.) Watkins testified that he and Cooper tried to dissuade the trio from leaving because

Sanders and Rose had been drinking most of the night and Sanders was "acting" intoxicated. (Tr. at 54.) Cooper also testified that, as she and Watkins came back from the grocery store, they found that Sanders, Rose, and Worl were going for a drive and she and Watkins tried to talk them out of leaving. Cooper testified that she believed Sanders was intoxicated "not nearly as bad as DJ but enough to where he shouldn't have been driving." (Tr. at 144.)

[18] Finally, Dr. George Behonick, a toxicologist, testified regarding his assessment of the hospital and law enforcement blood draws. Dr. Behonick opined that Sanders would have had a blood alcohol content of between .093 and .107, depending upon the time of the accident. Dr. Behonick testified that a person begins to show impairment when the person has a BAC of around .05.

[19] The State presented sufficient evidence to permit the jury to conclude, beyond a reasonable doubt, that Sanders was intoxicated when he drove. His contention that he attained sufficient sobriety that he was no longer impaired when he drove is an invitation to reweigh the evidence. We will not do so.

## Sufficiency of the Evidence – Leaving the Scene

[20] Sanders was convicted of violating Indiana Code Section 9-26-1-8, which provides in pertinent part:

> A person who knowingly or intentionally fails to stop or comply with section 1(1) or 1(2) of this chapter after causing injury to a person commits a Class A misdemeanor. However, the offense is: … a Class C felony if the accident involves the death of a person; and a Class B felony if the person knowingly or

intentionally fails to stop or comply with section 1(1) or 1(2) of this chapter after committing operating while intoxicated causing serious bodily injury.

[21] At the time of the fatal accident, Indiana Code Section 9-26-1-1 dictated that a driver involved in an accident resulting in injury, death, or entrapment had a duty to remain at the scene of the accident until the driver provided identification and registration information. Additionally, the driver was required [subject to the physical incapability provisions of section 1.5(a) of the same chapter] to determine the need for and render reasonable assistance to each person injured or entrapped. Finally, the driver was required to immediately give notice of the accident by the quickest means of communication to law enforcement.

[22] Sanders points out that his leg was broken, Worl left to report the accident, and someone else was driving when he left the scene. Essentially, Sanders argues that he did the best he could under the circumstances and should not be held criminally liable. However, the State presented evidence that Sanders directed the actions of others. Specifically, there was testimony indicating that Sanders told Worl to return to the Betzner residence although there was a much closer residence. When Cooper and Watkins returned to investigate, "there was nobody to be seen" and Sanders did not respond to calls for several minutes. (Tr. at 117.) He had crawled across the road "pretty far out in the woods." (Tr. at 117.) When Watkins told Sanders that Rose was dead and urged, "you can't run from this," Sanders screamed, cursed, and insisted upon leaving. (Tr. at

163.) As they left, Sanders, Worl, and Cooper were able to hear the sirens from approaching emergency vehicles. The immediate availability of emergency services undercuts Sanders' suggestion that he was trying to get to a hospital and get medical attention as quickly as possible. At its core, Sanders' argument that he was an injured hemophiliac who attempted substantial statutory compliance merely presents an invitation to reweigh the evidence. The State presented sufficient evidence that Sanders intentionally failed to comply with his duties as a driver involved in a fatal accident.

## Double Jeopardy

[23] The double jeopardy clause of the Indiana Constitution provides, "No person shall be put in jeopardy twice for the same offense." Ind. Const. art. 1, § 14. Our Indiana Supreme Court has held that two or more offenses are the "same offense" in violation of Indiana's double jeopardy clause if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999).

[24] Aside from the constitutional actual evidence test, our Indiana Supreme Court has identified five common law or statutory double jeopardy categories: (1) conviction and punishment for a crime which is a lesser-included offense of another crime for which the defendant has been convicted and punished, (2) conviction and punishment for a crime which consists of the very same act as

another crime for which the defendant has been convicted and punished, (3) conviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished, (4) conviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished, and (5) conviction and punishment for the crime of conspiracy where the overt act that constitutes an element of the conspiracy charge is the very same act as another crime for which the defendant has been convicted and punished. *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002).

[25] The second and third categories are implicated here. In Count 1, the State alleged that Sanders committed a Class B felony when he failed to stop "after committing Operating While Intoxicated Resulting in Serious Bodily Injury which resulted in serious bodily injury to Dalton James Rose." (App. at 14.) In Count 7, the State alleged that Sanders committed a Class C felony when he failed to stop after "being involved in an accident resulting in death to Dalton James Rose." (App. at 68.) The State presented evidence to establish that Sanders, after having committed driving while intoxicated, failed to comply with his statutory duties in light of injury to Rose. He was properly convicted of a Class B felony. However, the State did not establish that Sanders engaged in a separate act supporting the Class C felony, where the Information again referenced injury to Rose.

Sanders' offense of failure to stop was elevated to a Class B felony upon proof that he committed "operating while intoxicated causing serious bodily injury." I.C. 9-26-1-8(a)(3). However, Sanders was also convicted of Count 3, Class A misdemeanor Operating While Intoxicated Endangering a Person and Count 6, Class C felony Causing Death When Operating a Motor Vehicle While Intoxicated.

As the convictions for Counts 3, 6, and 7 do not rest upon independent facts, the multiple convictions cannot stand. We therefore direct the trial court to vacate the Class C felony convictions and the Class A misdemeanor conviction.

## Abuse of Sentencing Discretion

Upon conviction of a Class B felony, Sanders faced a sentencing range of six to twenty years, with the advisory sentence being ten years. I.C. § 35-50-2-5. Sanders received a fifteen-year sentence for his Class B felony conviction, with three years suspended.

"So long as the sentence is within the statutory range, it is subject to review only for abuse of discretion." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on other grounds*, 875 N.E.2d 218 (Ind. 2007) ("*Anglemyer II*"). This includes the finding of an aggravating circumstance and the omission to find a proffered mitigating circumstance. *Id.* at 490-91. When imposing a sentence for a felony, the trial court must enter "a sentencing statement that includes a reasonably detailed recitation of its reasons for imposing a particular sentence." *Id.* at 491.

[30] The trial court's reasons must be supported by the record and must not be improper as a matter of law. *Id.* However, a trial court's sentencing order may no longer be challenged as reflecting an improper weighing of sentencing factors. *Id.* A trial court abuses its discretion if its reasons for imposing a particular sentence are clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Hollin v. State*, 877 N.E.2d 462, 464 (Ind. 2007).

[31] Here, the trial court found Sanders' youth to be a mitigating circumstance. As aggravators, the trial court recognized that Sanders has a criminal history, he was on probation at the time of the instant offenses, and he refused to attend substance abuse counseling. According to Sanders, the record does not support a finding that he refused substance abuse counseling. Additionally, Sanders argues that the trial court should have recognized in mitigation that Rose "induced or facilitated the offense" and incarceration would result in undue hardship to Sanders because of his hemophilia. Appellant's Br. At 18.

[32] Sanders acknowledges that he missed a drug counseling appointment the morning of the accident. However, he claims that his compliance was impossible because he was in the hospital with a broken leg. He does not focus upon the testimony that he had missed, and re-scheduled, a prior appointment. Nonetheless, even if a trial court has relied upon an improper factor as an aggravating circumstance, the sentence may be upheld so long as other valid aggravating circumstances exist. *Bacher v. State*, 722 N.E.2d 799, 803 (Ind.

2000).  Here, other valid aggravators exist.  Sanders has a criminal history and violated his probation.

[33]  An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is not only supported by the record but also that the mitigating evidence is significant. *Anglemyer II*, 875 N.E.2d at 220-21.  The trial court is not obligated to explain why it did not find a particular circumstance to be significantly mitigating. *Sherwood v. State*, 749 N.E.2d 36, 38 (Ind. 2001).

[34]  Sanders claims that Rose facilitated the offense.  According to Sanders, Rose was bored and wanted to go for a ride; Sanders did not "force or coerce" him. Appellant's Br. at 19.  Sanders was not charged with a criminal offense involving force or coercion.  To the extent that Sanders suggests Rose's complicity excused Sanders' behavior, we disagree.  The record reveals that Sanders ignored his friends' warnings, regained his car keys (which had been taken away by Worl earlier in the evening), and chose to drive in an impaired condition.  Rose was not responsible for Sanders' choices.

[35]  As for hardship during incarceration, Sanders presented evidence of his hemophilia.  However, there was also evidence presented that the Indiana Department of Correction has inmates with this condition and appropriate medical resources to manage the condition.  Sanders has not demonstrated that the trial court abused its sentencing discretion in the recognition of aggravating or mitigating circumstances.

## Appropriateness of Sentence

[36] Under Indiana Appellate Rule 7(B), this "Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In performing our review, we assess "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The principal role of such review is to attempt to leaven the outliers. *Id.* at 1225. A defendant "'must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review.'" *Anglemyer*, 868 N.E.2d at 494 (quoting *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)).

[37] As for the nature of the offense, Sanders drove while intoxicated, resulting in his best friend's death. He then crawled away and hid himself in nearby woods. When his friends returned, Sanders insisted upon leaving the scene.

[38] As to the character of the offender, Sanders has a long history of substance abuse. He was adjudicated a juvenile delinquent for possessing a controlled substance, a Class C felony, if committed by an adult. He was placed on probation, which he violated. He was then removed from his mother's home and placed in a youth center. Shortly after he became an adult, Sanders pled guilty to criminal mischief. He was on probation at the time he committed the present offenses.

[39] Also, Sanders' conduct in the aftermath of the fatal accident does not speak well of his character. When his friends returned to the accident scene, Sanders' concern was for himself. Indeed, he screamed that he didn't' "give a f--- about" Rose. (Tr. at 118.)

[40] Having reviewed the matter, we conclude that the trial court did not impose an inappropriate sentence under Appellate Rule 7(B), and the sentence does not warrant appellate revision. Accordingly, we decline to disturb the sentence imposed by the trial court.

# Conclusion

[41] Sanders' Class A misdemeanor and Class C felony convictions must be vacated on double jeopardy grounds. The State presented sufficient evidence to support Sanders' conviction of the Class B felony. Sanders has not shown that the trial court abused its sentencing discretion. The aggregate sentence is not inappropriate.

[42] Affirmed in part; remanded with instructions to vacate the Class A misdemeanor and Class C felony convictions.

Bradford, J., and Altice, J., concur.